BRUCE W. HIGLEY, D.D.S., M.S., P.A. DEFINED BENEFIT ANNUITY PLAN; E.D. Warde & Sons, on behalf of themselves & others similarly situated; and Bronze Group, Ltd., Plaintiffs–Appellees,

v.

KIDDER, PEABODY & CO., INC., David C. Pulzone, Morgan Stanley & Co., Inc., and Barry M. Davis, Defendants–Appellees,

and Concerning Stephen B. Hard, Intervenor–Appellant.

No. 95CA1004.

Colorado Court of Appeals, Div. V.

Feb. 22, 1996.

Rehearing Denied March 28, 1996.

Certiorari Denied Aug. 19, 1996.

John F. Head, P.C., John F. Head, Denver; Hill & Robbins, P.C., Robert F. Hill, John H. Evans, Denver; Gold Bennett & Cera, Solomon B. Cera, San Francisco, California; Koncilja & Associates, P.C., Frances A. Koncilja, Denver; Dufford & Brown, P.C., S. Kirk Ingebretsen, Phillip D. Barber, Denver; and Pendleton, Friedberg, Wilson, Hennessey & Meyer, P.C., Alan C. Friedberg, Susan M. Hargleroad, Denver, for Plaintiffs–Appellees.

No Appearance for Defendants–Appellees.

Vaughan, Reeves & DeMuro, David R. DeMuro, Denver, J.C. Tim Scates, Denver, for Intervenor–Appellant.

Opinion by Judge CASEBOLT.

In this securities fraud class action, Stephen B. Hard, an unnamed class member, appeals the trial court's C.R.C.P. 23(e) approval of the settlement and the plan for the allocation of settlement proceeds. We affirm in part and reverse in part.

This class action was commenced by the named plaintiffs on behalf of themselves and a class composed of more than 900 individuals, pension plans, and other entities, against James D. Donahue; Kidder, Peabody & Co., Inc.; Morgan, Stanley & Co.; and others. The plaintiff class suffered a principal cash loss of more than $135 million invested in the Hedged Fund (Fund), a purported stock option trading program run by Donahue that, in reality, was a Ponzi scheme.

During the ten years Donahue operated the Fund, he regularly reported substantial earnings to investors, despite the fact that his trading activity actually consistently lost money. Donahue used money invested by later investors to pay out the fictitious earnings to the few investors who requested withdrawals. As a result, some of the investors in the Fund were able to withdraw more than they invested, while hundreds of others lost all or most of their investment.

Hard was one of the early investors in the scheme. He invested a total of $1,405,000 in the Fund in 1984 and 1985, and withdrew, at various times, a net cash total of $1,440,000. According to the fictitious reported earnings of the Fund, however, Hard's account showed a balance of $1,300,000 at the time the Fund collapsed.

A class action complaint was filed against Donahue, the broker-dealers, and a number of other entities and individuals. The complaint alleged losses by the class members consisting of the gross amounts invested less any distributions received, plus moratory interest of 20 per cent per annum on the net investment, as well as interest at the statutory rate. The trial court certified the class to include all those who had purchased or acquired an interest in the Fund and had "suffered a loss thereby."

The notice of class certification sent to Hard indicated that any individual or entity who had "suffered a loss on the investment" in the Fund was a member of the plaintiff class unless exclusion was requested. No definition of the term "loss" was provided with the notice; however, Hard did not inquire concerning its meaning, nor did he seek exclusion from the class.

A recovery in excess of $49 million was obtained through several settlements with various defendants, the largest of which was reached immediately before trial. The class

plaintiffs filed a motion with the trial court to approve the proposed settlement, together with a plan proposing allocation of the proceeds to members of the class who had suffered a "net principal loss."

Essentially, this plan proposed payment to defrauded investors on a "cash-in cash-out" basis. Under this proposal, each member of the class could make a claim based on a formula that considered the amount of the cash invested minus any cash distribution received. In essence, the proposal recommended that no recognition be given to the fictitious earnings reported by Donahue on various accounts.

Because Hard had already withdrawn a cash amount greater than his initial investment, he was not entitled to any share of the settlement proceeds under the proposed plan of allocation. After receiving notice of the proposed settlement and plan of allocation, Hard filed a notice of objection to the proposed allocation. At the hearing, he asserted that the proposal was unfair because it did not take into account the "time value of money," which he defined under a formula that considered the fictitious earnings that had been reported to investors as part of the Ponzi scheme.

Under this formula, Hard argued that he had suffered a "loss" on his investment. In addition, he contended that he had a tax loss, *i.e.*, the amount of taxes paid on the fictitious profits, which he argued should be considered in evaluating whether he was an individual sustaining a "loss." He waived his initial request, however, that the tax loss be directly compensated out of the settlement proceeds.

At the conclusion of the hearing, the trial court stated:

I recognize that there's more than one fair way to do this. The objectors want me to attribute interest rates or income to their investment when in fact there was none, and it seems to the Court that the method proposed by settlement counsel for deciding who had losses is more fair than doing it any other way. If settlement counsel had presented what the objectors propose to me and gave me a choice between the cash-in-and-cash-out method and the proposed method, why, I would choose the cash-in-and-cash-out method.

As a matter of fact, there were no earnings, and so these people who got more cash out than they [put] in got their own investment back and they got somebody else's capital account in addition.

So it seems to the Court that the proposed method is the most fair, and I approve it.

The orders concerning the settlement and plan of allocation required class members to submit proofs of claim, which also contained a release of liability in favor of the defendants, as a condition of a class member's right to obtain a distribution from the settlement fund. Hard declined to submit a claim.

Hard filed a motion to intervene to ensure his standing to maintain an appeal of the order approving the allocation plan. The motion was denied by the trial court. The court entered orders which provided that the settlement and plan of allocation were fair, reasonable, and adequate. From these orders, Hard appeals.

I.

After this appeal was commenced, plaintiffs filed a motion to dismiss the appeal, contending that Hard lacks standing because, by failing to file a proof of claim, he has rendered himself ineligible to participate in any distribution of the settlement fund. Therefore, plaintiffs reason, he has no interest in the subject matter of the orders he is appealing and thus, there is no actual controversy over which we may assert jurisdiction. Plaintiffs further assert that Hard is not an aggrieved party and that the trial court correctly denied his motion to intervene.

Hard argues that the trial court erred in denying his motion to intervene and asserts that, in any event, he has standing to appeal. Because we determine that Hard's motion to intervene should have been granted, we conclude that he has standing to appeal. Hence, we need not discuss Hard's alternative arguments concerning standing.

## A.

■ No Colorado appellate court has addressed whether class members under C.R.C.P. 23 who are not named plaintiffs may appeal an order approving a settlement or plan of allocation. Because C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23, cases applying the federal rule are instructive, *see Rosenthal v. Dean Witter Reynolds, Inc.,* 883 P.2d 522 (Colo.App.1994), *aff'd in part, rev'd in part,* 908 P.2d 1095 (Colo.1995), even though concepts of standing in the federal courts are somewhat different from those applied in Colorado. *See Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977) (state courts are not subject to "case or controversy" requirements of federal Constitution).

It is not clear in the federal courts whether class members who are unnamed plaintiffs have standing to appeal under these circumstances. One commentator has noted:

While absent class members need not formally intervene in a class action in order to raise objections concerning settlement, intervention may be permitted in order to allow class members to participate fully in settlement proceedings, to clarify the identity of parties bound by a consent decree, or to question implementation of the decree.

If objections to a proposed class settlement are overruled by the court, an absent class member may seek to intervene for the limited purpose of filing an appeal from that order, though it is not clear whether intervention is a prerequisite to the right of a class member to prosecute an appeal.

3 H. Newberg & A. Conte, *Newberg on Class Actions* § 16.10 (3d. ed. 1992).

Some federal appellate courts have adopted the rule that unnamed class members who have objected to a settlement have standing to appeal final orders in class actions without formal intervention. *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304 (3d Cir. 1993); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173 (9th Cir.1977). Others have held that formal intervention is a prerequisite. *Gottlieb v. Wiles,* 11 F.3d 1004 (10th Cir. 1993); *Guthrie v. Evans,* 815 F.2d 626 (11th Cir.1987); *Walker v. City of Mesquite,* 858 F.2d 1071 (5th Cir.1988).

■ In *Gottlieb v. Wiles, supra,* the court held that unnamed members of a class do not have standing to appeal the approval of a class action settlement unless the trial court has granted them intervenor status, at least in the absence of any violations of class action procedures intended to protect the rights of unnamed class members.

The *Gottlieb* court cited a number of reasons to justify such a requirement. First, the court noted that unnamed class members cannot represent the class absent compliance with the procedures that govern class certification. While a court has previously made a determination that the proposed class representatives' claims are typical of those of the class as a whole, and that the representatives will fairly and adequately represent the interests of the class members, such a determination has not been made with regard to unnamed class members.

Thus, permitting unnamed class members to pursue an appeal contrary to the wishes of the named class representatives would effectively substitute the unnamed members for the certified class representatives. Such a rule, the court reasoned, would undermine class actions suits by allowing unnamed class members to relitigate the suit without any indication that the named plaintiffs were improperly certified as class representatives.

Second, the court stated that Fed.R.Civ.P. 23 provides recourse for unnamed class members who disagree with the action taken by the class representatives. For example, unnamed class members can intervene, a procedure the court noted was explicitly contemplated by the Federal Rules Advisory Committee in adopting Fed.R.Civ.P. 24.

Third, unnamed class members under Fed. R.Civ.P. 23(b)(3) enjoy the protection offered by the notice and opt-out provisions of Fed. R.Civ.P. 23(c), and may protect their interest by pursuing their own litigation rather than participating in the class action.

Finally, the court explained that class actions were designed to unify and render manageable litigation involving numerous members of a homogeneous class who would otherwise each have access to the courts

through individual lawsuits. If individual appeals without formal intervention were to be permitted, said the court, the class action would break down under the burden of unpredictable and unlimited individual actions. Such a result would conflict with the goals of the rule and eviscerate the utility of class actions.

We agree with the reasoning of the *Gottlieb* court and accordingly hold that, absent intervention, an unnamed class member does not have standing to appeal the approval of a settlement agreement and plan of allocation.

■ Here, Hard's motion to intervene was denied. Nevertheless, an unnamed class member who has not been permitted to intervene may also have standing to bring a direct appeal if a motion to intervene, which is then appealed, should have been granted. *Shults v. Champion International Corp.*, 35 F.3d 1056 (6th Cir.1994). We agree with that rationale and, accordingly, must next determine whether Hard should have been permitted to intervene.

### B.

A motion for intervention of right is governed by C.R.C.P. 24(a), which provides that an applicant is entitled to intervention: 1) when the applicant claims an interest relating to the property or transaction which is the subject of the action; 2) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede his or her ability to protect that interest; and 3) the applicant's interest is not or may not be adequately represented by existing parties. *United Airlines, Inc. v. Schwesinger*, 805 P.2d 1209 (Colo.App.1991).

Here, Hard was a class member who claimed an interest in the settlement proceeds because he asserted that he had sustained a "loss." Indeed, the notice Hard received concerning class certification indicated that he would be a member of the class if he "sustained a loss" on his investment. Without further definition of the term "loss," Hard could reasonably have believed that he would have an interest in any proceeds of a settlement and should, therefore, forego his own individual action. Further, Hard

claimed an interest in the settlement funds which were the subject of the class action by virtue of the loss of the "time value" of the money he had invested with the Fund and the amounts he had paid in taxes on fictitious profits.

■ Contrary to plaintiffs' contention that Hard has no interest in the settlement fund because he had not sustained a "net principal loss," this first element for intervention looks merely to what interest is claimed by the intervenor, not whether he or she will ultimately be successful.

■ As a class member, Hard was situated in such a manner that disposition of the action would prevent him from pursuing alternative remedies to recoup this "loss" because he did not "opt out" of the class when given notice of the class certification. Hence, he was bound by the judgment of the court which, *inter alia*, prohibited further claims against the settling defendants.

■ As to the third requirement, Hard's interests were adverse to those of the named class plaintiffs who had not withdrawn any of their principal investment, and the effect of the cash-in cash-out method of allocation was to prevent him from sharing in the proceeds of the settlement. *See Denver Chapter of Colorado Motel Ass'n v. City & County of Denver*, 150 Colo. 524, 374 P.2d 494 (1962) (inadequacy of representation may be shown if the representative has or represents some interest adverse to that of the petitioner).

Hard met each of the three requirements for intervention. *See also* 3 H. Newberg & A. Conte, *Newberg on Class Actions* § 16.10, *supra.* Accordingly, he should have been permitted to intervene. *See Shults v. Champion International Corp., supra.*

### C.

■ We reject plaintiff's contention that Hard's failure to file a proof of claim bars his appeal. Under the allocation plan, he would not be entitled to any portion of the settlement proceeds, his proof of claim would have reflected a zero amount, and he would not have been entitled to participate in the award. The law does not require parties to

perform futile acts as a condition precedent to asserting important rights. *See Bell v. Arnold*, 175 Colo. 277, 487 P.2d 545 (1971).

Our determination under these circumstances also comports with the general requirements for standing articulated in *Wimberly v. Ettenberg, supra* (party must allege injury in fact to a legally protected interest). Accordingly, we conclude that Hard has standing to maintain this appeal.

## II.

Hard contends that the trial court erred when it determined that the cash-in cash-out plan of allocating the settlement proceeds was fair and equitable. Hard asserts that the class as certified consisted of all persons who had invested in the Fund and suffered "a loss," that the term "loss" was not restricted in any way, and that, therefore, settlement proceeds should have been allocated so that losses other than cash out-of-pocket were recognized. We conclude that the trial court did not abuse its discretion in approving the allocation of the settlement proceeds.

■ A trial court's approval of a settlement will not be overturned absent a "strong showing of a clear abuse of discretion." *Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust*, 674 P.2d 997, 999 (Colo.App.1983).

■ To say that a court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and that it is therefore not bound in all cases to select one over the other. *Colorado National Bank v. Friedman*, 846 P.2d 159 (Colo.1993).

■ To establish that a court has abused its discretion, it must appear that the court's choice of a particular course of action was manifestly arbitrary, unreasonable, or unfair. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994).

■ In evaluating a proposed settlement under C.R.C.P. 23(e), the trial court must determine whether the settlement is fundamentally fair, adequate, and reasonable. Some of the numerous factors that may govern the fairness inquiry include the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust, supra.*

■ While most cases deal with the fairness of the total settlement as between the defendants and the class as a whole, the same legal principles apply to appellate review of the proceeds allocation agreement. *In re Chicken Antitrust Litigation*, 669 F.2d 228 (5th Cir.1982).

■ Even though, generally, the proposed settlement should be fair and reasonable and in the best interest of all those who will be affected by it, *see* 7B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d*, § 1797.1 (1986), there is no rule that settlements must benefit all class members equally. *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501 (5th Cir.1981). However, a court may refuse to approve a settlement when a disparity of benefits to be received among the class members evidences either substantive unfairness or inadequate representation. *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir.1983).

■ An inference of unfairness may be rebutted by a factual showing that the allocation is rationally based on legitimate considerations. *Holmes v. Continental Can Co., supra.* Thus, evaluating a proposed settlement or allocation plan is a fact-specific inquiry requiring the balancing of the various factors which may be relevant in that case. *See Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust, supra.*

■ Here, Hard was a member of the class who would not receive any distribution of the settlement proceeds under the plan of allocation. However, the same cash-in cash-out formula was used to determine the amount every class member would receive; thus, in this sense, all class members were treated equally. Indeed, the only reason

Hard was not allocated any portion of the settlement was that he had, in effect, already received what he would have been entitled to, *i.e.,* the amount of his net cash investment, and more.

In substance, Hard had already received some other investor's capital when he withdrew more than he had invested, and if he were to receive any cash from the settlement proceeds, he would essentially be receiving even *more* of some other investor's capital. In fact, there was not enough in the settlement fund to pay all investors their full cash invested.

■ Hard's request that the trial court consider the "time value of money" was based on his calculation of the fictitious profits reported by Donahue from the Ponzi scheme. Apparently, Donahue simply made up the numbers he reported to investors as earnings. Allowing Hard's method of computation would simply continue the false pretense of "profit" that characterized this scheme.

■ Courts have traditionally held that investors in Ponzi schemes are entitled to no more than their original investment, and not to any purported earnings. In *Merril v. Abbott (In re Independent Clearing House Co.),* 77 B.R. 843 (D.Utah 1987), the court held that defrauded investors in a Ponzi scheme could not recover more than the amount of their original investment because to allow recovery of promised earnings would further the debtor's fraudulent scheme at the expense of other investors. *See also Sender v. Hannahs,* 176 B.R. 214 (D.Colo.1994) (stating that Hedged Fund investor has no legal or equitable right to require the payment of false earnings).

The record also indicates that the defendants who settled on the eve of trial and provided the vast bulk of the settlement proceeds had asserted statute of limitations defenses as to early investors in the fund, such as Hard. The settling defendants had also asserted that they could not be liable to early investors because the trades utilizing those early funds were made in years before the Fund began trading through the settling broker-dealer parties. Class plaintiffs had re-

sisted such contentions, but the vitality of those defenses remained problematic.

■ Hard asserts that the notice of class certification did not disclose that plaintiffs would only be seeking the *net* investment loss. Thus, he contends he was misled and the determination to pay only the "net principal loss" in reality amounts to a redefinition of the class. While these issues present factors to consider, we also note that the complaint clearly specified that the losses requested were "net" losses. Even though Hard correctly asserts that he was not sent a copy of the complaint, nothing prevented him from obtaining a copy before deciding whether to opt out of the litigation.

Another consideration is that, although there were several hundred class members who would not receive any settlement proceeds, only Hard and one other person claimed to have been misled by the class definition. Hard is also the only class member who has appealed the allocation of proceeds.

Neither Hard's claim that the trial court should have considered his entitlement to statutory interest, nor his contention that plaintiffs and class counsel breached fiduciary duties to him were raised in the trial court; hence, we decline to consider them. *See Christensen v. Hoover,* 643 P.2d 525 (Colo.1982).

As to Hard's claim concerning taxes paid on the fictitious profits, the record reflects that Hard was entitled to and had claimed a tax refund for the applicable tax years.

The record reveals that the trial court gave Hard a full and fair opportunity to present his objections to the allocation plan and to support the plan he proposed. The trial court also considered evidence that it was not fair to benefit "overpaid" investors such as Hard when other investors had yet to recover their initial investments. And, as the trial court correctly recognized, there was more than one fair way to allocate the proceeds.

Hence, we conclude that the trial court's decision to accept the cash-in cash-out method does not demonstrate a clear abuse of discretion.

The order denying Hard's motion to intervene is reversed, and he is deemed to have the status of an intervenor. The orders approving the settlement and plan of allocation are affirmed.

STERNBERG, C.J., and NEY, J., concur.