NUMBER 13-00-377-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________

MICHAEL NORTHRUP AND HOMER MAX WIESEN , Appellants,


v.


SOUTHWESTERN BELL TELEPHONE COMPANY, ET AL. , Appellees.

__________________________________________________________________


On appeal from the 357th District Court

of Cameron County, Texas.

__________________________________________________________________
OPINION ON REHEARING

Before Justices Dorsey, Rodriguez, and Seerden (1)

Opinion by Justice Dorsey


Michael Northrup and Homer Max Weisen appeal an order of the 357th District Court of Cameron County which certified
a class action and approved the final settlement of its claims. In an unpublished opinion dated December 21, 2000, this
Court dismissed their appeal for want of jurisdiction. After this Court dismissed their claims, appellants filed a motion for
rehearing, a motion for rehearing en banc, and a motion to publish. After reconsideration, we vacate our previous opinion,
reinstate the appeal, and substitute the following opinion.

I. Facts


In mid-1998, Jose Mireles and Harry Noble, on behalf of themselves and all others similarly situated, filed a lawsuit
alleging a class action against Southwestern Bell Telephone Company (SWBT). The class consisted of SWBT customers
who were charged a particular type of fee on their SWBT bill called a "municipal charge." (2) The class plaintiffs alleged
that SWBT was not authorized to make this charge and/or that SWBT overcharged its customers for it. As both Mireles
and Noble were residents of Cameron County, the lawsuit was filed there. (3)

Substantial discovery was exchanged between the parties, and, a year and a half after the lawsuit was filed, the parties
entered into an agreement that would settle the class action. They filed the agreement with the court, and asked for its
approval. In this agreement, the parties "stipulated" to the conditional certification of the class and to appointment of
Mireles and Genuchi as representatives of the class. The parties also stipulated to the designation of five attorneys as
counsel for the class. (4)

Mireles and Genuchi moved the court to approve the preliminary settlement, and on December 16, 1999, the trial court
signed an order granting its preliminary approval. In this order, the trial court "conditionally certified" the action to proceed
as a class action and preliminarily approved the settlement. The order appointed the attorneys requested by the plaintiffs,
and approved of the form of notice that would be delivered to all class members. The order also set a hearing to hear
evidence on the fairness of the settlement.

The actual terms of the proposed settlement were complex. No part of the settlement funds would be paid directly to the
class members. Rather, SWBT would pay ten million dollars into a settlement benefits fund, with three million dollars to
be in the form of cash and seven million dollars in the form of "service credits." The "service credits" portion of the
settlement could be "offset" by SWBT by any or all of the following: (a) costs of providing notice to the class members, up
to $1,250,000.00; (b) costs of payment of an administrator; and/or (c) attorneys' fees paid by SWBT up to $2,000,000. 
SWBT would be responsible for the costs of notice and for class counsel's fees. Any remainder of the seven million dollar
fund would be applied with the other portion of the settlement toward funding for the Texas Telecommunications
Infrastructure Fund Board (TIFB).

The three million dollar cash portion of the settlement would be paid in the form of two separate grants. One, in the amount
of two million dollars would be used or distributed by the TIFB for salaries of regional Web Librarians for the Texas
Internet Collaborative Community Networks. (5) The other million dollars would be given as a grant to the TIFB for "local
advertising of websites or for training of users of Web Librarians for the collaborative community networks." 

 While the parties filed the full text of the proposed settlement agreement with the court, the notice that was actually sent
to the class members contained only a summary of the settlement terms. The notice also stated that the attorneys for the
class would be seeking up to two million dollars in fees, an amount equal to twenty percent of the "total benefit provided to
the class."

The notice advised the class members that they had four options. Each class member could: (1) remain a class member
and become bound by the final judgment; (2) retain private counsel at his own expense; (3) request exclusion from the class
and not become bound by any judgment; or (4) object to the settlement. Any class member objecting to the proposed
settlement was required to file his objection and any supporting papers with the court by a certain date. The objection was
required to include a written statement of the objector's position and grounds therefore and copies of any supporting papers,
briefs, or other documents. The notice further provided that any member of the settlement class who intended to appear
personally or through separate counsel to object to the settlement must file a Notice of Intention to Appear. Any class
member failing to file objections in the time and manner prescribed would be "forever foreclosed from raising any
objection to such matters."

A handful of class members filed objections, including appellants Northrup and Weisen. (6) The hearing took place as
scheduled, and the trial court, ultimately, entered an order that approved the certification of the class, approved the
settlement of the class action, and approved the two million dollars requested in attorney's fees. The only objectors that
appeared at the hearing were Southwestern Tariff Analysts, a company in the business of auditing phone bills, and the
Texas Equal Justice Foundation. Their objections were resolved prior to the actual hearing on the fairness of the
settlement. All objections to the settlement were overruled in the final judgment.

Northrup and Weisen appealed the order approving the settlement to this Court. The class representatives and SWBT filed
motions to dismiss the appeal, contending that because appellants did not intervene in the class action suit prior to final
judgment, they lacked standing to appeal the judgment. (7) This Court agreed, and dismissed the appeal for want of
jurisdiction. We have reconsidered the matter, and announce that in class action cases where the "settlement class" device
is used--i.e., where the class is certified simultaneously with or subsequent to the settlement of the class
action--pre-settlement intervention is not required in order for an unnamed class member to have standing to appeal.

II. ANALYSIS


The issue in this case is whether Northrup and Weisen were required to formally intervene in the lawsuit in order to have
standing to appeal the order approving its settlement. We believe that unique aspects of Texas procedure require that if the
settlement class device is used, an unnamed class member should not be required to have formally intervened in the lawsuit
to have standing to appeal the settlement. A brief discussion of the competing interests at play in class action litigation and
the procedural mechanisms currently in place illuminates the jurisprudential significance of this issue and our reasoning for
refusing to adopt the intervention requirement in settlement class cases.

A. Class Action Procedures In General


Class actions are allowed by both the Texas and the federal rules, and have their roots in ancient courts of equity. See Tex.
R. Civ. P. 23; Fed. R. Civ. P. 42; Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000); see generally Stephen C.
Yeazell, The Past and Future of Defendant and Settlement Classes in Collective Litigation, 39 Ariz. L. Rev. 687 (1997)
(tracing history of class action). Under both sets of rules, a lawsuit is allowed to proceed as a class action when the claims
of numerous parties are similar enough that they can be adequately adjudicated with a single party, or a small number of
parties, prosecuting the lawsuit as representatives of all the class members as a whole. See Tex. R. Civ. P. 23; Fed. R. Civ.
P. 42. The purpose for providing the class action device is to grant meaningful recompense to groups of injured parties
whose injuries would be too small to make it cost-effective to prosecute them individually. See Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 617 (1997); General Motors Corp. v. Bloyed, 916 S.W.2d 949, 952-53 (Tex. 1996). As the Texas
Supreme Court has recently observed, "[w]hen properly applied the class action device is unquestionably a valuable tool in
protecting the rights of our citizens." Southwestern Refining Co., Inc. v. Bernal, 22 S.W.3d 425, 439 (Tex. 2000). 

Though the class action device provides benefits to both the class plaintiffs and the defendants, the form is also plagued by
congenital difficulties. Accord Bloyed, 916 S.W.2d at 952-55. (8) Inherent conflicts of interest are created. See id. The
class representative is vested with broad authority to determine the fate of all the unnamed class members' claims. See id. 
Upon settlement, the largest payment many times will go to the lawyers who represent the class because the individual
claims are likely to be small. See id. Of course, the class defendants have every incentive to maximize the scope of the
class and minimize the amount of the settlement as they stand to gain mass relief from potential liability. See id. Thus, a
situation is created where the class counsel's interests may appear to be more closely aligned with that of the defendants'
than with that of the class members. See id.; see also Issacharoff, Class Action Conflicts, supra n.7 at 813-15. For this
reason, the rules of procedure and the courts recognize that trial courts presiding over class action lawsuits have a
heightened duty to supervise the lawsuit in order to ensure that the interests of the unnamed class members are adequately
represented by both the named class representatives and by class counsel. See id. at 954.

B. The First Order of Business: Certification of the Class


The "class action" rules, federal rule 23 and Texas rule 42, provide a system of procedural safeguards for the protection of
unnamed class members. (9) Under both, the first step in proceeding with a class action lawsuit is to obtain a ruling by the
trial court declaring the case appropriate for the class action device. Tex. R. Civ. P. 42(c); Fed. R. Civ. P. 23. Rule 42(c) of
the Texas Rules of Civil Procedure states that "as soon as practicable after the commencement of an action brought as a
class action, the court shall, after hearing, determine by order whether it is to be so maintained." Tex. R. Civ. P. 42.(c)(1).
The federal rule contains the same language. See Fed. R. Civ. P. 23(c). This procedure is commonly referred to as
"certifying" a class. (10)

"[T]here is no right to litigate a claim as a class action. Rather, Rule 42 provides only that the court may certify a class
action if the plaintiff satisfies the requirements of the rule." Bernal, 22 S.W.3d at 439. In certifying the class, the trial
court must assume a more proactive role than in other types of litigation in order to protect unnamed class members against
the inherent conflicts of interest between class members, class representatives, and class counsel. Accord Bloyed, 915
S.W.2d at 954. In that vein, the Texas Supreme Court has held that "a cautious approach to class certification is essential,"
explaining that "[c]ourts must perform a 'rigorous analysis' before ruling on class certification to determine whether all
prerequisites to certification have been met." Bernal, 22 S.W.3d at 435. The issues in a certification determination are
whether:

(1) the class is so numerous that joinder of all members is impracticable;



(2) there are questions of law or fact common to the class;



(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and



(4) the representative parties will fairly and adequately protect the interests of the class.



Tex. R. Civ. P. 42(a); Fed. R. Civ. P. 23(a). Additionally, the evidence must show that the class action is "maintainable" as
a class action by meeting one of the four additional sets of criteria listed in Rule 42(b). (11)

 In this case, the trial court held that common issues of fact and law predominated over individual ones, making
certification of the class "fair, efficient and appropriate." Tex. R. Civ. P. 42(b). Thus, the class was certified pursuant to
Rule 42(b)(4).

C. Administration of a Class Action


Once a class is certified, the court must then take steps to administer the case as a class action. In Texas, this means
directing notice to the class members of the pendency of the class action and other matters affecting their rights. See Tex.
R. Civ. P. 42(c)(2). (12) In an action maintained under 42(b)(4), such as this one, the notice shall advise the class members
"that the judgment, whether favorable or not, will include and bind all members who do not request exclusion by the
specified date." Id. (13) Once a class action is certified, it may not be dismissed or compromised without the approval of
the court, and notice of any such dismissal or compromise must be given to all class members in a manner directed by the
court. See Tex. R. Civ. P. 42(d); Fed. R. Civ. P. 23(e).

D. Settlement of a Class Action


When a class action is settled, unique procedural safeguards come into play. In General Motors Corp. v. Bloyed, the Texas
Supreme Court held that Rule 42(e) requires that before a trial court dismisses a class action pursuant to a settlement, it
"must examine both the substantive and procedural aspects of the settlement [to determine]: (1) whether the terms of the
settlement are fair, adequate, and reasonable; and (2) whether the settlement was the product of honest negotiations or of
collusion." Bloyed, 916 S.W.2d at 955. (14) Also, adequate notice must be provided to the class members of all of the
material terms of the proposed settlement, including specific information regarding the projected amount of attorney's fees. 
Id. at 957.

The trial court must hold an evidentiary hearing to determine the fairness of the proposed settlement. Id. at 958-59. Once
the court is satisfied that the terms of the settlement are fair and that adequate notice has been provided to all class
members, it may enter an order approving of the settlement. Id. Not surprisingly, because this is a consensual dismissal,
the actual parties to the class action are not likely to "appeal" any such order.

E. The "Settlement Class" Procedure


 An abbreviated procedure referred to as a "settlement class" has taken root in both Texas and federal class action practice. 
See AmChem Prods. v. Windsor, 521 U.S. 591, 619-20 (1997); Bloyed, 916 S.W.2d at 955; McAllen Medical Center, Inc. v.
Cortez, 17 S.W.3d 305, 310 (Tex. App.--Corpus Christi 2000, pet. granted Dec. 21, 2000). (15) The "settlement class" is a
procedural device employed in class action lawsuits whereby the trial court delays certifying a class until the final
settlement of the class action. See e.g. AmChem, 521 U.S. at 619-20; Bloyed, 916 S.W.2d at 954-55. This Court has
explained that:

Rule 42's certification requirements of numerosity, commonality, typicality, and adequacy of representation must always be
met, even when cases are settled before certification of the class. In settlement class actions, the actual class ruling is
deferred until after hearing on the settlement approval, following notice, to the class. Accordingly, at the fairness hearing
on the proposed settlement . . . , the trial court must resolve two primary issues: (1) whether to certify the class under the
Rule 42 prerequisites of numerosity, commonality, typicality, and adequacy of representation; and if so, (2) whether the
settlement is fair, adequate, and reasonable.



McAllen Medical Center, Inc., 17 S.W.3d at 310 (internal citations omitted). While the use of settlement classes has
become commonplace, it has been watched with skepticism by the courts and scholars alike. Accord Franklin, Phantom
Menace, at 190-93; Georgine v. AmChem, 83 F.3d 610, 626-35 (1996); Bloyed, 916 S.W.2d at 955.

The United States Supreme Court has recognized that although the settlement class device had become "routine,"
settlements negotiated in this context require careful scrutiny of whether the absentee class members' interests are
adequately represented. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 619-20 (1997). The Court has noted that:

specifications of the [class action] Rule--those designed to protect absentees by blocking unwarranted or overbroad class
definitions--demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance,
for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class,
informed by the proceedings as they unfold.

Id. at 620 (emphasis added). Put another way, "proposed settlement classes sometimes warrant more, not less, caution on
the question of certification." Id. at 620 n.16.

The Texas Supreme Court also has recognized the inherent conflicts fostered by settlement class cases. Bloyed, 916 S.W.2d
at 954-55. In Bloyed, it cautioned that "[s]ettlement classes... make it more difficult for a court to evaluate the settlement
by depriving the judge of the customary structural devices of Rule 42 and the presumptions of propriety that they generate." 
Id. (quoting In re General Motors Corp., 55 F.3d at 787-88). While "[o]rdinarily, a court relies on class status, particularly
the adequacy of representation required to maintain it, to infer that the settlement was the product of arm's length
negotiations, . . . [w]here the court has not yet certified a class or named its representative or counsel, this assumption is
questionable." Id. Moreover, settlement classes "create especially lucrative opportunities for putative class attorneys to
generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the
pendency of the action." Id. Thus, it seems quite clear that, especially in Texas, use of settlement classes should be
cautiously applied and scrupulously reviewed. We believe the approach we have adopted in this case best serves the Texas
policy of heightened scrutiny of settlement class cases.

F. Standing Requirements for Appealing


Class Action Settlements




Not all class actions that settle use the settlement class device. A class may be certified prior to a party moving for court
approval of a settlement. Regardless of whether a class action settlement involves a settlement class or not, the question
has arisen in the federal courts, and to a limited extent, in Texas, of whether certain parties possess standing to appeal an
order approving the settlement of a class action. The majority position appears to be that in order for an unnamed class
member to possess standing to appeal a settlement, he must have first filed a plea in intervention in the lawsuit prior to
entry of the final judgment. See, e.g., Walker v. City of Mesquite, 858 F.2d 1071 (5th Cir. 1988);Shults v. Champion Int'l
Corp., 35 F.3d 1056, 1061 (6th Cir. 1994); In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 457-58
(7th Cir. 1997); Croyden Assoc. v. Alleco, Inc., 969 F.2d 675 (8th Cir. 1991); Gottlieb v. Wiles, 11 F.3d 1004, 1012 (10th
Cir. 1993); Guthrie v. Evans, 815 F.2d 626 (11th Cir. 1987) (all imposing an intervention requirement); Carlough v.
Amchem Prods., Inc., 5 F.3d 707, 710-14 (3d Cir. 1993) (declining to entertain appeal from order denying intervention
because objecting class members would be allowed to appeal without intervention); see also San Juan 1999-A, L.P. v.
Meridian Oil, Inc., 951 S.W.2d 159 (Tex. App.--Houston [14th Dist.] 1997, pet. denied) (imposing intervention
requirement); cf. O'Reiley v. Brodie, 975 S.W.2d 57, 59-60 (Tex. App.--San Antonio 1998, pet. denied) (no standing for
non-member of the class). (16) The rationale behind the intervention requirement is twofold. First, unnamed class members
are not, technically, parties to the litigation until they formally intervene in the lawsuit. Accord San Juan, 951 S.W.2d at
163-64. Second, class action settlements would be too unwieldy and finality would be too difficult to obtain if unnamed
class members were able to appeal them. Id.

Only one published Texas court of appeals case has addressed this issue, and while it held that the intervention requirement
should be imposed, it noted that the case did not involve a settlement class. SeeSan Juan, 951 S.W.2d at 165 n.7. We
agree that imposition of the intervention requirement is appropriate in non-settlement class actions. However, we hold now
that when the settlement class device is used, an unnamed class member is not required to have formally intervened in the
lawsuit prior to final judgment in order to have standing to appeal the settlement. (17)

IV. Application: Formal Intervention is not Required


in Settlement Class cases




Because the settlement class procedure was utilized in this case, we refuse to rigidly apply the intervention requirement. 
We believe this is the correct approach for several reasons.

A. Inconsistency with the Interlocutory Appeals Statute




First, imposing the intervention requirement on settlement class cases would operate to abrogate a party's right to
interlocutory appeal of a class certification decision. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3). The Texas
Civil Practice and Remedies Code grants a litigant the absolute right to an interlocutory appeal of a trial court's ruling "that
. . . certifies or refuses to certify a class in a suit brought under Tex. R. Civ. P. 42." Id. The Texas Supreme Court has held
that the right to an interlocutory appeal under this rule extends to any order that "alter[s] the fundamental nature of the
class." Bally Total Fitness Corp. v. Jackson, 2001 Tex. LEXIS 26 at *2 (Tex. April 19, 2001) (citing to the rule in De Los
Santos v. Occidental Chemical Corp., 933 S.W.2d 493, 495 (Tex. 1996)); see also Nissan Motor Co. v. Frye, 27 S.W.3d
573, 581 (Tex. App.--Corpus Christ 2000, no pet.); Microsoft Corp. v. Manning, 914 S.W.2d 602, 607 (Tex.
App.--Texarkana 1995, writ dism'd.); American Express Travel Related Services v. Walton, 883 S.W.2d 703, 707 (Tex.
App.--Dallas 1994, no writ). We know of no Texas case that limits this right to only named class representatives.

Appellees urge this Court to hold that although litigants in Texas are expressly granted the right to challenge an order
certifying a class when it is contained in an interlocutory order, that right is somehow cut off when the order is not
interlocutory, but is made a part of the final judgment. Such a holding would create a way for class proponents to
effectively sidestep the certification requirements. Rule 42 contemplates that a class will be certified early in the lawsuit. 
Tex. R. Civ. P. 42(c). It states that "as soon as practicable after the commencement of an action brought as a class action,
the court shall, after hearing, determine by order whether it is to be so maintained." Id. Presumably, the reason a class
should be certified "as soon as practicable" is so that the unnamed class members may be notified as soon as possible that
their rights may be impacted by the lawsuit. Once a class action has been certified, an unnamed class member may
intervene in the class action or may challenge the certification decision itself by interlocutory appeal. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(3). Delaying the certification decision until the final judgment would effectively cut off that
right to interlocutory appeal.

The intervention requirement is predominately a device fashioned by federal courts, and the federal rules do not have a
statute comparable to the one in Texas that allows for interlocutory appeal of a certification ruling. (18) Imposition of the
federal intervention requirement in settlement class cases seems at odds with Texas' policy of granting appeal of right of
class certification decisions.

Moreover, a recent case from this Court calls for the result we reach today. In McAllen Medical Center, Inc. v. Cortez, this
Court held that in settlement class cases, no person may appeal from an order that preliminarily certifies the class because it
would be premature. McAllen Medical Center, 17 S.W.3d at 310. We explained that at the time the preliminary
certification order is signed, no certification hearing has been conducted, thus, there has not been a determination that Rule
42's requirements have been satisfied. Id. The class is not formally certified until that hearing is held. Id. Thus, any appeal
of a certification decision would lie not from the preliminary certification, but only from the formal certification. Id. In
settlement class cases, the certification hearing is held at the same time as the hearing on the fairness of the settlement, and
the certification is incorporated into the final judgment. Id.

If we applied the rule in McAllen Medical Center to the case at bar, no one would have been entitled to appeal the order
preliminarily certifying the class action because it would have been premature. (19) Then, if we were to adopt the position
urged by appellees, no one would be entitled to appeal the formal certification decision unless they had intervened before
judgment. The mere fact that a certification decision is incorporated into a final judgment instead of an interlocutory order
would trigger an additional standing rule. The net effect would be a substantial narrowing of the ability of an unnamed
class members to appeal the trial court's certification decision. We refuse to abrogate the rights of unnamed class members
in this manner.

However, this case is not a class certification appeal. The issue in this case is whether an unnamed class member may
appeal the settlement of the class action without having intervened prior to settlement. The Texas Supreme Court has held
that the issue in appeals of class action settlements is whether the settlement was fair to the class members. See Bloyed,
916 S.W.2d at 955. We believe the two issues--fairness of the settlement and certification of the class--are inextricably
intertwined, and hold that if the "certification" decision in a final order is appealable, then, likewise, the "fairness" decision
in that order must also be appealable.

The fairness of any proposed settlement is necessarily dependent upon a threshold finding that the matter is appropriately
maintained as a class action. Without a proper ruling on the question of certification, no settlement can be fair. See Bernal,
22 S.W.3d at 345; AmChem, 521 U.S. at 619-20;Bloyed, 916 S.W.2d at 345. Even SWBT, in its filings with this Court,
recognizes that:



The trial court's certification decision is part and parcel of the trial court's overall fairness determination under Rule 42. . . 
. Thus, in the analysis regarding whether an unnamed class member may directly appeal, there is no distinction between the
certification, adequacy of representation, and fairness decisions. All of these matters are contained in a "final judgment."

Thus, if the certification portion of the final judgment is appealable by an unnamed class member, so, too, should the
fairness portion of that judgment be appealable by an unnamed class member. (20)

B. Intervention is Not Required by Existing Texas Law




The next reason we believe this to be the correct approach is based on our reading of Texas class action law. Because no
case is directly on point, we are forced to distill a rule from analogous principles gleaned from caselaw, statute and the
rules. The applicability of the intervention requirement is not addressed by statute, nor by the Texas rules. The most
closely analogous rule in Texas is the interlocutory appeal statute. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3). 
As we have explained, our position is that a certification decision should be appealable to the extent it is appealable under
that statute regardless of whether it is interlocutory or is incorporated into a final judgment. Since the interlocutory appeal
statute does not require intervention, we refuse to require intervention when the appeal is from a final judgment.

In the seminal Texas case on class action procedures, Bloyed, the appellants were three class members who filed objections
to the proposed settlement of the class action and were represented by counsel at the fairness hearing. See Bloyed v.
General Motors Corp., 881 S.W.2d 442, 427 (Tex. App.--Texarkana 1994), aff'd, 916 S.W.2d 949 (Tex. 1996). It is
unclear whether the appellants had formally intervened prior to approval of the settlement. However, the court in Bloyed
seemed to suggest that issues concerning the adequacy of the notice to class members--particularly, the adequacy of the
notice of the proposed amount of attorney's fees--may be appealed by class members without regard to whether or not the
parties had formally intervened. Bloyed, 916 S.W.2d at 957-58.

The only published Texas case to squarely address this issue is a Houston Fourteenth Court of Appeals case, San Juan
1999-A, L.P. v. Meridian Oil, Inc., 951 S.W.2d 159 (Tex. App.--Houston [14th Dist.] 1997, pet. denied). The court in San
Juan held that intervention is required, but pointed out that use of a settlement class might have changed its result. In a
footnote, the San Juan Court explained:

The issue of standing was not addressed in . . . Bloyed . . . . Moreover, [unlike the class in this case,] the class in Bloyed
was a settlement class and the trial court had not made a prior determination that the class representatives adequately
represented the class.



San Juan 199-A, L.P., 951 S.W.2d at 165 n.7. The court in San Juan also recognized that "an exception to the intervention
requirement may exist when a procedural flaw in the notice of the proposed settlement provided to class members is so
deficient that it results in a due process violation." Id. at 165.

We agree that intervention is not required to challenge insufficient notice of a class action settlement. The Texas Supreme
Court, in Bloyed, held that "class action settlement notices must contain the maximum amount of attorney's fees sought by
class counsel and specify the proposed method of calculating the award." Bloyed, 916 S.W.2d at 957. We would hold that
this issue also may be appealed by unnamed class members without regard to whether or not they formally intervened. If
the notice was deficient, the unnamed class members would likely be unaware of the deficiency until after the fairness
hearing. Accordingly, the only way to provide meaningful review is to allow an unnamed class member to appeal the
settlement.

Alternatively, appellees urge this Court to hold that because neither Weisen or Northrup appeared in person at the fairness
hearing, they lack standing to prosecute this appeal. Again, we refuse to adopt an approach that would impose a standing
rule that is not imposed by statute, the Texas Rules of Civil Procedure, nor by controlling precedent. A technical,
procedural rule such as this should not be imposed upon unnamed class members without first providing them clear notice
of its requirements. (21)

We believe that when neither the rules of civil procedure nor binding precedent dictates that we require formal intervention
to convey standing to appeal, the better course is to place the heaviest burden on the parties most able to bear it. In this
case, that would be the named representatives and SWBT. We recognize that the majority of federal courts require
intervention. We believe that Texas class action law suggests a different approach. Namely, because Texas expressly
authorizes interlocutory appeal of an order certifying a class, and because we read Bloyed to say that settlement class cases
should be reviewed with heightened scrutiny, we hold that intervention is not required to convey standing in settlement
class cases.

C. Settlement Class Cases Should Receive Scrupulous Review




As we have discussed, both the U.S. Supreme Court and the Texas Supreme Court have expressly cautioned against
allowing the settlement class device to collapse the protections for unnamed class members incorporated into the rules. See
AmChem Products, Inc., 521 U.S. at 619-20; Bloyed, 916 S.W.2d at 914-15. In non-settlement class cases, the class is
certified prior to settlement, and the class representatives are required by the rules to send out notice to the class. Tex. R.
Civ. P. 42(c)(2). The class members are thereby put on notice that a class action is pending, and have a clear opportunity to
challenge the adequacy of the named representative by appealing the class certification or by filing an intervention. See
Tex. Rev. Civ. Prac. & Rem. Code Ann. § 51.014(a) (interlocutory appeal of class certification); Tex. R. Civ. P. 60 (any
party may intervene, subject to a motion to strike). Later, if a settlement is reached, notice of the settlement given to the
class members would, ostensibly, be the second notice advising class members that their substantive rights are likely to be
affected by the pending class action. This approach, obviously, better protects the interests of the unnamed class members
than the settlement class approach.

We recognize that even in settlement class proceedings, the class is typically notified of the "preliminary class certification"
and the terms of the proposed settlement. The appellees argue that this notice sufficiently informs putative class members
of the putative class action, and justifies imposing on them a duty to intervene as a prerequisite to appeal. However, the
"preliminary certification" procedure is not addressed in the Texas rules. Because it is a judicial creation, no absolute
requirements are imposed upon either the trial court or the preliminarily named class representatives. Moreover, even if the
preliminary notice is adequate, the possibility remains that the preliminary nature of the notice will not adequately motivate
the unnamed class members to take action necessary to protect their interests. We believe the better course is to err on the
side that favors protection of the interests of the unnamed class members.

Imposition of the intervention requirement seems especially inappropriate in settlement class cases because use of the
settlement class device already compromises procedural safeguards for unnamed class member contained in the existing
class action rules. See Bloyed, 916 S.W.2d at 955. One of the primary issues in a certification hearing is whether the named
representatives can adequately represent the interests of the unnamed class members. Cf. Tex. R. Civ. P. 42(b)(4)
(requiring common interests predominate over individual ones). When the certification hearing has not been conducted
prior to approval of the settlement, it seems overly harsh to apply a strict rule requiring formal intervention. See also
Bloyed, 916 S.W.2d at 954-55.

Finally, SWBT and the named representatives argue that failing to adopt the intervention requirement would make
settlement virtually impossible in class action proceedings because a lone dissident can take the class hostage by appealing
a settlement that was agreeable to all other class members. However, that risk can be eliminated merely by formally
certifying the class prior to moving for approval of the settlement.

To the proponents of a class action suit, the differences between settlement class and non-settlement class proceedings are
negligible. If the class certification procedures outlined in Rule 42 are, in practice, closely followed in settlement class
proceedings, the burden would be the same as in non-settlement class cases. The only differences in the two procedures
would be that (1) in a non-settlement class case, two notices would be sent to the class members--one advising of the
certification, and one advising of the proposed settlement, and (2) the certification decision would be clearly subject to
interlocutory review. Any greater burden thereby imposed on the class proponents is not unreasonable.

V.


Conclusion




The only question currently before this Court is whether Northrup and Weisen possess standing to proceed as appellants. 
Issues regarding the scope of their appeal and preservation of error in the trial court will be addressed as they arise.

Northrup is undisputedly an unnamed member of the class. Weisen contends that even though the definition of the class
does not technically include him, he is nevertheless a class member because he was charged the fee at issue in the lawsuit.
(23) While neither Northrup or Weisen appeared at the fairness hearing, they both filed objections to the proposed
settlement. Northrup's objection was particularly comprehensive in that he disputed virtually all aspects of the proposed
settlement including the adequacy of the notice, the adequacy of representation, and the amount of attorneys' fees requested. 
Because we have held that intervention is not required for unnamed class members to have standing to appeal the
settlement of the class action, we reinstate the appeal of Weisen and Northrup and order that the appellees file their
responsive briefs within thirty days of the date of this order.

 

J. BONNER DORSEY,

Justice

Publish.

Tex. R. App. P. 47.3(b).

Opinion delivered and filed

this 14th day of June, 2001.

1. Senior Justice Robert J. Seerden assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. A "municipal charge" is a fee that SWBT was charged by municipalities for use of public rights-of-way. SWBT passed
this charge on to its customers in their bills.

3. Approximately six months after the lawsuit was filed, Patricia J. Genuchi intervened as an additional class plaintiff. She
eventually took the place of Noble as a named representative of the class.

4. The attorneys were Jeffrey M. Tillotson, Michael P. Lynn, P.C., Thomas M. Melsheimer, John T. Cox, III, and Michael
R. Cowan.

5. The Texas Internet Collaborative Community Network Plan is a plan developed by the TIFB to provide online
Internet-based community information and resource networks for Texas communities and surrounding areas.

6. Objections were filed by Steven Eubanks, Al McZeal, Southwestern Tariff Analysts, the Texas Equal Justice
Foundation, Homer Max Weisen, Ken Hoagland, and Michael Northrup.

7. Rule 60 of the Texas Rules of Civil Procedure provides that "any party may intervene by filing a pleading, subject to
being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60.

8. The efficacy of the class action is the perpetual topic of much debate, and its shortcomings have been well documented. 
See generally Gregg H. Curry, Conflicts of Interests Problems for Lawyers Representing a Class in a Class Action Lawsuit,
24 J. Legal Prof. 397 (1999/2000); David Brainerd Parish, Comment, The Dilemma: Simultaneous Negotiation of
Attorneys' Fees and Settlement in Class Actions, 36 Hous. L. Rev. 531 (1999); Genine C. Swanzey, Using Class Actions to
Litigate Mass Torts: Is there Justice for the Individual?, 11 Geo. J. Legal Ethics 421 (1998); Samuel Issacharoff, Class
Action Conflicts, 30 U.C. Davis L. Rev. 805 (1997); Sylvia R. Lazos, Note, Abuse in Plaintiff Class Action Settlement
Negotiations, 84 Mich. L. Rev. 308 (1985); Arthur Miller, Of Frankenstein Monsters and Shining Knights, Myth, Reality
and the Class Action Problem, 92 Harv. L. Rev. 664 (1979).

9. While this case was conducted pursuant to Texas rules of procedure, we highlight certain similarities and differences in
federal and Texas class action procedure because we perceive this case to turn on one of the few differences in the two
systems.

10. Both the Texas rule and the federal rule further provide that the determination of whether a class action may be
maintained "may be altered, amended, or withdrawn at any time before final judgment." See Tex. R. Civ. P. 42(c)(1); Fed.
R. Civ. P. 23(c)(1). The only difference in those two particular parts of the class action rules is that the Texas rule allows
for the court to order the naming of additional parties in order to insure the adequacy of representation, and the federal rule
has no such provision. See Tex. R. Civ. P. 42(c)(1); Fed. R. Civ. P. 23(c)(1); see also Fred Misko, Jr., Managing Complex
Litigation: Class Actions & Mass Torts, at 102, app. A -3 (presented at the Tx. Ctr. for the Judiciary 1997) (current version
at www.misko.com, entitled Misko on Class Actions (Law Offices of Fred Misko, Jr., 2001)).

11. Rule 42(b) lists four different types of class actions. If the prerequisites to bringing a class action listed in Rule 42(a)
are met, the evidence must then show that the class action is maintainable as one of the four types listed in Rule 42(b). The
types of class action listed in Rule 42(b) are:



(1) a class wherein "the prosecution of separate actions by or against individual members of the class would create a risk of either



(A) inconsistent or varying adjudications with respect to individual members of the class which would establish
incompatible standards of conduct for the party opposing the class, or



(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the
interests of the other members not parties to the adjudications or substantially impair or impeded their ability to protect
their interests"; or



(2) a class wherein "the party opposing the class has acted or refused to act on grounds generally applicable to the class,
thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"; or



(3) a class "where the object of the action is the adjudication of claims which do or may affect specific property involved in
the action"; or



(4) a class where "the court finds that the questions of law or fact common to the members of the class predominate over
any questions affecting only individual members, and that a class action is superior to other available methods for the fair
and efficient adjudication of the controversy. The matters pertinent to the findings include:



(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions;



(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;



(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;



(D) the difficulties likely to be encountered in the management of a class action."



Tex. R. Civ. P. 42(b). The federal rule regarding certification is identical except that it does not contain option (3), listed
above. See Fed. R. Civ. P. 23(b).

12. The rule requires the notice to be the "best notice practicable under the circumstances including individual notice to all
members who can be identified through reasonable effort." Tex. R. Civ. P. 42(c)(2).

13. The federal rule is more liberal, providing that the court may make an appropriate order which, among other things,
might determine the course of proceedings and require notice to be given in a particular manner. See Fed. R. Civ. P. 23(d).

14. The Bloyed Court outlined the factors a court should consider in making this determination: "(1) whether the settlement
was negotiated at arms' length or was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the
litigation; (3) the stage of the proceedings, including the status of discovery; (4) the factual and legal obstacles that could
prevent the plaintiffs from prevailing on the merits; (5) the possible range of recovery and the certainty of damages; (6) the
respective opinions of the participants, including class counsel, class representatives, and the absent class members." 
Bloyed, 916 S.W.2d at 955.

15. See also, generally William W. Schwarzer, Settlement of Mass Tort Class Actions: Order Out of Chaos, 80 Cornell L.
Rev. 837, 840-41 (1995); Darren N. Franklin, Note, The Mass Tort Defendants Strike Back: Are Settlement Class Actions a
Collusive Threat or Just a Phantom Menace? 53 Stan. L. Rev. 163 (2000) (hereinafter, "Franklin, Phantom Menace").

16. See generally Timothy A. Duffy, The Appealability of Class Action Settlements by Unnamed Parties, 60 U. Chi. L.
Rev. 933 (1993). Cf. Haberman v. Lisle, 884 S.W.2d 262 (Ark. 1994); Higley v. Kidder, Peabody & Co, Inc., 920 P.2d
884, 888-890 (Colo. 1996) (absent intervention, an unnamed class member does not have standing to the approval of a
settlement, but, if his objections are overruled, he may file an intervention for the limited purposes of appeal and may
appeal a denial of the intervention); Morris Cos., Inc., 714 So.2d 1146, 1148 (Fla. Ct. App.--3d Dist. 1998):



Class members can move to intervene (if they want for the limited purpose of being able to appeal) and if their motion is
denied they can appeal from that denial. Leave to intervene should be freely granted for purposes of appeal provided that
the objector is a class member and objected to the settlement in the trial court.



Where objectors seek intervention in order to appeal and intervention is denied, the appropriate procedure is to appeal both
the final judgment and the order denying intervention. If on appeal it is shown that the trial court erred by denying
intervention, the appellate court will then consider the merits of the challenge to the settlement.



... It is permissible for an unsuccessful objector to move to intervene after judgement in order to be able to appeal. A
motion is timely when filed within the time period in which the named plaintiffs could have taken an appeal.



(citing United Airlines, Inc. v. McDonald, 432 U.S. 385, 395-96 (1977) (internal cites and quotes omitted)).

17. This Court has recently adopted the intervention requirement in an unpublished opinion in a case that did not involve a
settlement class. See Malveaux v. American Chrome & Chemicals, Inc., 2001 Tex. App. LEXIS 753, at *4-*7 (Tex.
App.--Corpus Christi February 1, 2001) (unpublished opinion) (dismissing appeal by unnamed class member for lack of
standing because unnamed class member did not formally intervene in the lawsuit prior to entry of final judgment). We
find non settlement class cases distinguishable. In non-settlement class cases, unnamed class members have the
opportunity to challenge the certification of the class, or similar issues, prior to entry of the final judgment approving
settlement of the class action. Requiring an unnamed class member to intervene in a lawsuit that has not yet been formally
certified as a class action seems harsh.

18. Rather, the federal rule provides that "[a] court of appeals may in its discretion permit an appeal from an order of a
district court granting or denying class action certification . . . ." Fed. R. Civ. P. 23(f).

19. McAllen Medical Center was argued at the Texas Supreme Court in March 2001.

20. We note, though, that whether the unnamed class member has properly preserved his complaint for purposes of appeal
by timely presenting it to the trial court is a different question. It is quite possible that while an unnamed class member
may have standing to bring an appeal, he may have waived certain issues by failing to adequately present them to the trial
court. See, e.g., Tex. R. App. P. 33.1 (a).

21. Weisen and Northrup filed an "intervention," but it was incorporated into their notice of appeal. Thus, they failed to
intervene prior to the final judgment. Some jurisdictions hold that intervention is required, but that it may be filed after
final judgment. See e.g. Higley v. Kidder, Peabody & Co., 920 P.2d 888-90. (22)

22. 

23. (He contends that the fee was called something other than a "municipal charge" in his SWBT bill, but that it represented
the same thing.)