Henry INGRAM, James Britt, William Moody, and Roy T. Floyd, Individually and on behalf of all persons similarly situated, Plaintiffs,

and

Frances Williams, Edward Milon, Horace Mitchell, Herbert Bruton, Jovino Garcia, Intervenors,

v.

MADISON SQUARE GARDEN CENTER, INC., Madison Square Garden Corporation, Allied Maintenance Corporation, Allied Public Events Service Corporation, and Local # 3 I.B.E.W., Defendants.

Shelly L. ANDERSON, James L. Perry, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

MADISON SQUARE GARDEN CENTER, INC., Madison Square Garden Corporation, Allied Maintenance Corporation, Allied Public Events Service Corporation, Local 3 I.B.E.W., Local 54, Service Employees International Union, Defendants.

Nos. 76 CIV 5870 (LBS), 78 CIV 1453 (LBS).

United States District Court, S. D. New York.

Oct. 23, 1979.

See also, D.C., 482 F.Supp. 414.

Lewis Tesser, New York City, for plaintiffs.

Paul, Weiss, Rifking, Wharton & Garrison, Gerald D. Stern, New York City, for defendants Madison Square Garden Center Inc., Madison Square Garden Corp.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, Robert I. Gosseen, New York City, for defendants Allied Maintenance Corp., Allied Public Events Service Corp.

### OPINION

SAND, District Judge.

This is a motion pursuant to F.R.Civ.P. 23(e) for approval of a proposed class action settlement or consent decree entered into between all four of the plaintiff classes in these two consolidated class actions and Madison Square Garden Center, Inc., Madison Square Garden Corporation, Allied Maintenance Corporation and Allied Public Events Service Corporation, referred to collectively herein as "the settling defendants". The factual and procedural background of this litigation is described fully in an earlier opinion of this Court in this matter dated October 3, 1979, wherein Local 3, International Brotherhood of Electrical Workers ("Local 3") was found to have violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970) and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1970).[1] Familiarity with the facts is therefore assumed in the discussion that follows.

Under the proposed decree, the settling defendants maintain that "they are and always have been in full and complete compliance" with Title VII and all other federal and state employment discrimination statutes, and agree to work towards the goal of employing blacks and hispanics ("minorities") at the Garden as laborers in accordance with their general proportion in the labor force in the New York local labor market. To this end, the plaintiffs and Garden defendants agree to the following:

(1) Five of the members of the plaintiff class, (Ingram, Britt, Pettigrew, Boudreaux and Perry) will be given the opportunity to become laborers before any other person is hired as a laborer by Madison Square Garden Center, Inc.

("Center, Inc."), which retains its good faith right to reject or terminate employment of these plaintiffs.

(2) Center, Inc. will thenceforth use its best efforts to fill every second available job in the laborer's force with a qualified minority applicant, with qualified class members having the opportunity to fill every fourth (i. e., every second minority) position, until minority representation among the laborers reaches 27%. Center, Inc. shall maintain a list of class members who apply for positions as laborers and shall extend offers to qualified applicants in order of seniority, as measured by the duration of each applicant's employment at the Garden.

(3) The decree is not applicable either to the hiring of laborers on a "temporary" basis as defined in the decree, or to the reemploying of laborers who are at present or in the future may be laid off. Center, Inc. is not obligated to increase the number of permanent laborers.

(4) Nothing in the agreement effects the seniority or other rights of existing laborers, except that the defendants agree to be bound by any order or settlement regarding seniority subsequently entered against Local 3.

(5) After the 27% goal is reached, and for not less than 5 years from the effective date of the decree, or one year after the 27% goal is reached, whichever occurs later, Center, Inc. is required to post notices of laborer openings at a prominent place within the Garden, setting out application procedures and necessary qualifications. There is no obligation to maintain minority representation within the laborer force at or above the 27% level at all future times.

(6) For so long as the aforementioned hiring constraints remain in effect, the Garden defendants shall provide quarterly reports of all laborer hiring to plaintiffs' attorney within thirty days following the close of each calendar quarter.

---

1. The Local 3 trial was bifurcated into a liability and a remedial stage. The remedial proceeding is currently before this Court.

(7) Defendants agree to pay $117,500 to the named plaintiffs and all class members in full settlement of plaintiffs' monetary claims.

(8) Defendants will not oppose an application by plaintiffs' attorney for legal fees and expenses in the sum of $47,500, and counsel for plaintiffs will make no application against the settling defendants for legal fees in excess of that amount. Plaintiffs also agree to indemnify settling defendants from any claims or judgments against them resulting from any order or settlement with Local 3 or 54.

Notice of the proposed decree was mailed via first class mail or personally delivered to each member of the plaintiff classes on September 28, 1979. The notice specifically informed class members of their right to object to the settlement and instructed them as to how to do so.[2] No objections have been made, and at a hearing held on October 17, 1979, counsel for plaintiff and the settling defendants urged this Court to approve the settlement. The settlement is now approved to the extent set forth herein.

▮ The purpose of requiring Court approval of a "dismissal" or "compromise" of a class action is to protect the interests of non-party class members. *See George v. Parry*, 77 F.R.D. 421 (S.D.N.Y.1978), affirmed, 578 F.2d 1367 (2d Cir. 1978) (oral opinion). In determining whether a settlement adversely affects such interests, the essential question is whether the proposed settlement is fair and reasonable and in the best interests of all those who will be effected by it. *See Robertson v. National Basketball Ass'n*, 556 F.2d 682 (2d Cir. 1977). *See generally*, 7 A Wright and Miller, *Federal Practice and Procedure*, § 1797 (1972). Factors to be considered in making such a determination include the complexity, expense and likely duration of the litiga-

tion avoided by the settlement, the reaction of the class members to the settlement, the resources of the defendant, the stage of the proceedings and the amount of discovery completed, the risks attendant upon seeking a class remedy through litigation, and the reasonableness of the settlement in light of both the best possible recovery and the risks of litigation. *See City of Detroit v. Grinnel Corp.*, 495 F.2d 448 (2d Cir. 1974).

▮ Rather than dwell at length on factors such as the complexity and risks of the potential litigation, it seems appropriate to focus on the two factors which the Court finds most significant in this particular case.[3] First, no class member has objected to the proposed settlement. This factor takes on added importance in light of both the relatively small size of the class[4] and the type of notice given. Second, the remedial measures provided by the proposed decree encompass almost the entire spectrum of types of relief typically available in employment discrimination litigation. Prompt relief is provided for five of the named plaintiffs, minority hiring and more regularized hiring practices are imposed, damages and counsel fees are awarded and the settling defendants agree to be bound by whatever seniority modification comes out of the current Local 3 litigation.

From both the face of the agreement and the reaction of the class, it seems clear that this settlement provides plaintiffs with a highly desirable recovery from *these defendants*, and that however great or minimal the expense and risk attendant upon a full trial on the merits, plaintiffs have substantially achieved their goals without being subjected to those burdens. Finally, the Court notes that settlement was reached only after extensive discovery by both sides, and that there has been no allegation and certainly no evidence of collusion by counsel.

The settlement decree includes an uncontested award to plaintiffs' attorney of $47,-

---

**2.** Objecting class members were instructed to write to this Court.

**3.** The Court notes, however, that at least insofar as the Garden defendants are concerned, plaintiffs herein could probably have estab-

lished a *prima facie* violation of the employment discrimination statutes based on the facts adduced during the Local 3 trial.

**4.** The combined membership of all four plaintiff classes was 194.

500 for both legal fees and expenses. No class member has objected to this award. To date, however, plaintiffs' counsel has not provided the Court with records of his hourly rate, time spent and expenses incurred. There is thus no basis for the Court to determine whether the award is reasonable under the circumstances. The Court awaits submission of the requested information before deciding whether to approve this part of the settlement. We proceed in this piecemeal fashion because, at oral argument, counsel for the Garden informed the Court that ten laborers were to be hired in the near future, and that the Garden would be reluctant to adopt the minority hiring provided in the settlement if it were not under a Court decree.

In the Court's view, the four classes involved herein will receive benefits from this settlement at least commensurate with any they could reasonably have expected from a full trial. There is no evidence of possible prejudice to absent class members, all of whom have been notified and given the opportunity to object. Accordingly, the motion for approval of the settlement is granted, except as to the application for counsel fees. That application will be considered after plaintiffs' counsel's affidavit is received.

SO ORDERED.