619 F.2d 65
 Fed. Sec. L. Rep. P 97,361
Carol MILLER et al., Plaintiffs-Appellees,
v.
The WOODMOOR CORPORATION et al., Defendants-Appellees.
William C. LEIPOLD et al., Plaintiffs-Appellees,
v.
WESTINGHOUSE CREDIT CORPORATION, Defendant-Appellee,
George W. Hoelzel, Rosemary Hoelzel, Charles G. Thomas,
Regina M. Thomas, Members of the Plaintiff Class
and Objectors-Appellants.
 No. 78-1782.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 22, 1980.
Decided April 14, 1980.
 
 Mark L. Fulford, Denver, Colo. (Dawson, Nagel, Sherman & Howard, Hugh A. Burns, David R. Johnson, and H. Clay Whitlow, Denver, Colo., on brief) for Westinghouse Credit Corp., defendant-appellee.
 Arthur L. Fine, Denver, Colo. (Davis, Miner & Barnhill and Charles Barnhill, Jr., Chicago, Ill., on brief) for Carol Miller, et al. and William C. Leipold, et al., plaintiffs-appellees.
 Bruce B. Lassman, Castle Rock, Colo., for objectors-appellants.
 Before HOLLOWAY, BREITENSTEIN and DOYLE, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is a class action suit charging security fraud. Four members of the class objected to a court-approved settlement. After hearings, the trial court denied the objections, and this appeal followed. We affirm.
 
 
 2
 Woodmoor Corporation, a Colorado land developer, promoted four projects, Woodmoor at Monument, Roxborough, Stagecoach, and Woodmoor Mountain. Tracts of raw land were sold for prices which contemplated that Woodmoor would furnish roads, utilities, and other facilities. Woodmoor was badly under-capitalized. Westinghouse Credit Corporation (WCC) was Woodmoor's main source of credit and advanced funds to Woodmoor on the security of land purchasers' promissory notes.
 
 
 3
 The financial troubles of Woodmoor resulted in a 1975 bankruptcy declaration. Land buyers brought class action suits against Woodmoor and WCC alleging violations of federal security laws and fraud. A class of approximately 4,500 members was certified. After extensive discovery and negotiation the parties submitted a proposed settlement agreement to the court. With regard to Woodmoor at Monument, Roxborough, and Stagecoach, the settlement provided for development of the projects with financing by WCC through return of notes to respective property owners associations. Woodmoor Mountain was treated differently. The notes were to be turned back to the makers.
 
 
 4
 Our concern is with the district court's August 21, 1978, "Supplemental Opinion and Order Affirming Settlement as to Woodmoor Mountain." Objectors-appellants, George W. and Rosemary Hoelzel and Charles G. and Regina M. Thomas, filed objections to the manner of implementation of the settlement. Their position is that the notes should not be returned to the makers but should go to an association which would use the proceeds for the development of the Woodmoor Mountain project. An evidentiary hearing was held to determine the fairness of the implementation to the affected class members.
 
 
 5
 Woodmoor Mountain was the least developed of the four projects. In early 1973, Woodmoor decided that it could not be developed because of high cost and storm damage. Woodmoor Mountain had 145 lots of which approximately 28 had been sold. The record is not clear as to the number of notes WCC held on Woodmoor Mountain properties. The variance is from 14 to 21. The Thomas objectors are class members who purchased their one lot outright. The one lot owned by the Hoelzels was not purchased from Woodmoor and the note is held by a lender other than WCC.
 
 
 6
 After the hearing on the objections, the district court did not make findings of fact and conclusions of law as such. As permitted by Rule 52(a), they are included in a written memorandum of decision and are adequately detailed.
 
 
 7
 The court noted that Woodmoor had abandoned the project in 1973, that no development had occurred in the area since 1973, and that there was no "stable, functioning property owners association which could assume the responsibilities of managing a trust fund." After detailing the conflicting evidence on feasibility, the court noted that "the vast majority of class members at Woodmoor Mountain prefer the return of their notes to the establishment of a trust fund for development." The court questioned whether the $117,000 value of the WCC notes, after deduction of administrative and other costs, would be sufficient to make significant improvements at Woodmoor Mountain. The court concluded that the terms defining the implementation at Woodmoor Mountain are fair to the class members.
 
 
 8
 The objectors do not attack the basic settlement. A class action settlement will be set aside only for abuse of discretion. Grunin v. International House of Pancakes, 8 Cir., 513 F.2d 114, 123, cert. denied 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93, and City of Detroit v. Grinnell Corporation, 2 Cir., 495 F.2d 448, 454-455. Objections to the implementation of a settlement are governed by the same rule. The manner of effectuating the settlement must be fair. Pettway v. American Cast Iron Pipe Co., 5 Cir., 576 F.2d 1157, 1214, cert. denied 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74.
 
 
 9
 The objectors say that they were not treated as well as those who purchased land in the other three projects. Through the return of the notes to owners' associations, WCC was to contribute $1,350,000 to Woodmoor at Monument, $2,000,000 to Roxborough, and $7,000,000 to Stagecoach. In contrast the contribution to Woodmoor Mountain would be only $117,000, and none of that would be derived from note payments by the four objectors. They were not in debt to WCC. No owner whose note was held by WCC has objected to the settlement. Those owners are satisfied to have their notes returned. The four objectors are in no position to complain unless the Woodmoor Mountain project is economically feasible. They were given every opportunity to prove feasibility and did not convince the trial court.
 
 
 10
 The district court found the implementation of the plan to be fair and equitable. This finding binds us unless it is clearly erroneous or an abuse of discretion. See American Employers Insurance Co. v. King Resources Co., 10 Cir., 556 F.2d 471, 478. "If there is warrant for the action of the District Court, our task on review is at an end." Group of Investors v. Milwaukee R. Co., 318 U.S. 523, 564, 63 S.Ct. 727, 749, 87 L.Ed. 959. Economic feasibility cannot be determined with mathematical certitude. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 526, 61 S.Ct. 675, 685, 85 L.Ed. 982. The determination lies within the informed discretion of the trial court. We are convinced that the trial court exercised that discretion properly.
 
 
 11
 We reject the objectors' complaint that the court shifted the burden of proof to them. The parties to the settlement supported their conclusions to the satisfaction of the court and the objectors had every opportunity to show that the settlement was unfair to them and their class. This is enough. See Grunin v. International House of Pancakes, 513 F.2d at 125.
 
 
 12
 Affirmed.