Robert THOMAS and Heidi Thomas, Appellants,

and

Willis Wetzler, on behalf of himself and other shareholders of Springs Hospitality, Inc., a Colorado corporation, and Colorado Springs Lodging, Inc., a Colorado corporation, acting on a shareholder derivative basis, Plaintiffs–Appellees,

v.

Gholamreza RAHMANI–AZAR, a/k/a Bruce Rahmani; Colorado Hospitality Services, Inc., a Colorado corporation; and Colorado Springs Hospitality Services, LLC, a Colorado limited liability corporation, Defendants–Appellees.

No. 08CA0671.

Colorado Court of Appeals, Div. VII.

May 28, 2009.

Arrington & Associates, P.C., Barry K. Arrington, Arvada, Colorado, for Appellants.

Cohen & Associates, P.C., Jeffery Cohen, Aaron Boschee, Denver, Colorado, for Plaintiffs–Appellees.

Horowitz/Forbes, LLP, Peter C. Forbes, Denver, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this appeal from a judgment of dismissal of a shareholder derivative action brought by plaintiff, Willis Wetzler, against defendant, Gholamreza Rahmani–Azar, shareholders, Robert and Heidi Thomas (objectors), seek to set aside the order of the trial court approving settlement of the derivative claims. We affirm.

## I.  Background

In May 2006, Wetzler, on behalf of himself and derivatively as a shareholder, filed suit against Rahmani alleging that he had engaged in a pattern of self-dealing and mismanagement of properties owned by Springs Hospitality, Inc. (SHI) and Colorado Springs Lodging, Inc. (CSL).

SHI is a closely held corporation owned in equal one-third shares by objectors, Wetzler, and one Jerome Heymans, who is not a party to this appeal.  SHI owned a hotel which was managed by Rahmani under an at-will management agreement.  Likewise, CSL is a closely held corporation owned in equal one-third shares by objectors, Rahmani, and either Heymans or Wetzler (their dispute over the ownership of those shares is not a subject of this appeal), which owned a hotel managed by Rahmani in his capacity as president of the corporation.

At the time he filed the action concerning Rahmani's management of the SHI and CSL hotels, Wetzler also was engaged in numerous, similar disputes with Rahmani, involving

other properties, each accusing the other of self-dealing and malfeasance. Those disputes proceeded to arbitration, which involved more than fifty claims for relief and twenty counterclaims. Ultimately the arbitration panel found, as relevant here, that Wetzler had failed to sustain his claims against Rahmani. Wetzler and Rahmani then entered into a global settlement mutually releasing all claims between them, in which Rahmani agreed to purchase for $3.5 million Wetzler's interests in their jointly owned properties.

Although Wetzler's derivative claims against Rahmani concerning SHI and CSL had not been part of the prior arbitration proceeding, the global settlement also included a "walk away" agreement, mutually releasing and dismissing the SHI- and CSL-related claims. However, because of their derivative nature, the agreement further provided that those claims would be finally determined only after notice and opportunity to be heard was afforded to objectors and any other shareholders.

Subsequently, objectors challenged the settlement of the derivative claims, arguing that Wetzler was improperly self-dealing by settling all claims against Rahmani, agreeing to sell Rahmani his one-half interest in their jointly owned properties, but not receiving anything for the derivative claims. Objectors also asserted that it was unreasonable to settle the derivative claims for no money. After an evidentiary hearing, the trial court disagreed with objectors' contentions and issued an order approving the settlement.

## II. Standard of Review

### A. Review of Trial Court's Choice of Applicable Legal Standard

■ We review de novo the trial court's determination of the proper legal standard. *See, e.g., Corsentino v. Cordova,* 4 P.3d 1082, 1087 (Colo.2000).

The standard for approval of a settlement of a derivative action under C.R.C.P. 23.1 is a matter of first impression in Colorado. However, because C.R.C.P. 23.1 is substantially identical to Fed.R.Civ.P. 23.1, federal case law is highly instructive. *See Benton v.*

*Adams,* 56 P.3d 81, 86 (Colo.2002); *Bruce W. Higley Defined Benefit Annuity Plan v. Kidder, Peabody & Co.,* 920 P.2d 884, 889 (Colo. App.1996) *(Higley )* (when a Colorado rule of procedure is substantially identical to the corresponding federal rule, we may refer to federal decisions interpreting that provision).

■ The standard for the evaluation of settlements of class actions under Fed. R.Civ.P. 23 (and C.R.C.P. 23) is whether an agreement is fair, adequate, and reasonable. *Girsh v. Jepson,* 521 F.2d 153, 156–57 (3d Cir.1975); *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975); *see also Helen G. Bonfils Foundation v. Denver Post Employees Stock Trust,* 674 P.2d 997, 998 (Colo.App.1983). Federal courts addressing the issue hold that the approval of settlements of derivative actions under Fed. R.Civ.P. 23.1 is subject to the same standard. *See Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir.1984); *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1311 (3d Cir. 1993).

This is because, in each instance, in evaluating a settlement, the court is charged with guarding the interests of those who are not parties to the agreement. *See In re General Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1080 (6th Cir.1984) (derivative action); *Ingram v. Madison Square Garden Ctr., Inc.,* 482 F.Supp. 426, 428 (S.D.N.Y.1979) (class action); *see also Tyco Labs., Inc. v. Kimball,* 444 F.Supp. 292, 299 (E.D.Pa.1977) (possibility that a plaintiff will engage in preferential settlement is present in all derivative actions and is safeguarded by requirement of court approval).

We agree with this reasoning and conclude that the standard for approval of a settlement under C.R.C.P. 23.1 should be identical to the standard for evaluating a class action settlement under C.R.C.P. 23(e). Therefore, we conclude that, here, the trial court applied the correct legal standard.

### B. Standard of Review of Decision to Approve Settlement

■ Federal courts addressing the issue also hold that the standard of review of a trial court's decision to approve a settlement

under Fed.R.Civ.P. 23.1, as it is with appellate review of class action settlements, is for an abuse of discretion. *See In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir.1995) (requiring showing of abuse of discretion); *see also Higley*, 920 P.2d at 891 (reviewing settlement of a class action); *Miller v. Woodmoor Corp.*, 619 F.2d 65, 66 (10th Cir.1980) (same). We agree with these courts that a trial court's approval of a settlement of a derivative action is a discretionary determination, which, as in class action settlements under C.R.C.P. 23(e), will not be overturned on review absent a showing of abuse of discretion.

### III. Merits

#### A. Wetzler Did Not Obtain a Windfall at Objectors' Expense

■ Objectors' primary contention is that the trial court abused its discretion in approving the settlement because, they allege, Wetzler breached the fiduciary duty he owed to the other SHI and CSL shareholders. Specifically, they assert that Wetzler unfairly reaped individual benefit from his settlement with Rahmani, via receipt of a $3.5 million payment, by "throwing in" the derivative action when, at the same time, objectors received nothing. We disagree.

■ A shareholder plaintiff in a derivative action sues on behalf of the corporation and in that capacity owes a fiduciary duty to the corporation and its shareholders. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *In re KMF Actions*, 56 F.R.D. 128, 136 (D.Mass. 1972), *aff'd*, 479 F.2d 257 (1st Cir.1973); *see also Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d at 324 ("whether the proposed settlement was fairly and honestly negotiated" is a factor to be considered in approving a settlement); *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 956 (Tex.1996) (whether settlement was a "product of fraud or collusion" is a factor to be considered by the court in approving a settlement).

From our review of the record, we find no merit in objectors' contention that the trial court erred in approving the settlement because, according to objectors, Wetzler received an improper personal benefit from the settlement.

Specifically, while Rahmani agreed to pay Wetzler $3.5 million as part of the settlement, unrefuted evidence showed that the fair market value of all the properties owned jointly by Wetzler and Rahmani was $7 million. Thus, although Wetzler received substantial monies, it was in exchange for assets of equal value. Furthermore, the parties' business relationship was beyond repair. It is reasonable to conclude, then, that Rahmani's "payment" was nothing more than a buyout of Wetzler's one-half interest for the purpose of unwinding a no longer workable joint venture.

Furthermore, other than the buy-out, and Rahmani's reciprocal agreement to release his claims against Wetzler, Wetzler received nothing in settlement of his individual claims against Rahmani. Indeed, Wetzler did not recoup any of the substantial litigation and arbitration costs, over $3 million, that he had expended in his disputes with Rahmani.

#### B. The Trial Court's Approval of the Settlement Was Not an Abuse of Discretion

Discretion means the court has the "power to choose between two or more courses of action" and is not bound to select one over the other. *Colorado Nat'l Bank v. Friedman*, 846 P.2d 159, 166 (Colo.1993) (quoting *People v. Crow*, 789 P.2d 1104, 1106 (Colo. 1990)); *see also Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir.1974) (appellate court does not "decide whose assertions are correct" but merely ascertains whether the court's approval of the settlement was an abuse of discretion).

■ In evaluating class action settlements, courts agree on a nonexclusive list of factors which should be considered in evaluating whether a settlement agreement is fair, adequate, and reasonable: the strength of the plaintiff's case; risk and expense of further litigation; amount of the settlement; extent of discovery completed; experience and views of counsel; and reaction of interested parties to the settlement. *See Higley*, 920 P.2d at 891 (evaluating a proposed settlement

is a fact-specific inquiry requiring the balancing of the relevant factors) (citing *Bonfils,* 674 P.2d at 999); *see also Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

As determined above, we agree with the trial court that these factors are equally applicable to the evaluation of settlements of derivative actions. Here, it is apparent from the record that the trial court carefully and thoroughly considered and weighed these factors, and acted well within its discretion in applying them to approve the settlement.

### 1. Strength of Plaintiffs' Case

The essence of the derivative claims was that Rahmani had usurped an opportunity to sell the SHI property and had concealed a pending sale of the CSL property while acquiring it in his own name. Apparently, SHI and CSL had been losing money for several years and were being subsidized through funds advanced from entities owned solely by Rahmani and Wetzler. In 2005, those subsidies ceased and SHI and CSL both defaulted on the mortgage loans on the properties.

As relevant to the SHI claims, Rahmani purchased the note and deed of trust encumbering the SHI property, but only after he had informed the shareholders and offered them the opportunity to purchase the note. Objectors asserted that, at that time, Rahmani was holding an offer from a third party to buy the property for more than the amount due on the note, but concealed this fact from the shareholders. However, as the trial court found, even assuming Rahmani did conceal the existence of such an offer, SHI suffered no loss from any "missed opportunity" because the sale never took place. Indeed, when the trial court approved the settlement, a Rahmani entity still owned the property.

As to the CSL claims, Rahmani had acquired title to the property after it had been unsuccessfully marketed for the prior six months and he sold the property to a third party six weeks later at a profit. Objectors argued that Rahmani "had a buyer in mind all along, which he concealed from the other shareholders." However, as the trial court found, there was no evidence to show that Rahmani had prearranged the sale, or even knew of the eventual buyer, before acquiring the CSL property.

As the trial court noted, based upon testimony from the parties to the prior arbitration proceedings, similar misfeasance claims against Rahmani had been extensively litigated and rejected by the arbitration panel. Certainly, in this context, and considering the absence of any alleged losses suffered by SHI, and the lack of evidence regarding Rahmani's alleged misfeasance related to the CSL claims, it was reasonable to conclude that the remaining derivative claims were not likely to succeed on the merits. *See West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085 (2d Cir.1971) (most important factor is the strength of the case, on the merits, balanced against the amount of the settlement).

### 2. Risk and Expense of Further Litigation

Although it made no specific finding regarding the risk and expense of further litigation, the trial court noted that SHI and CSL could be even worse off if litigation were pursued because they could be subject to an award of fees and costs. Furthermore, the testimony at the hearing was that objectors had not previously offered to assist in financing the litigation, and that Wetzler and Heymans remained exposed to additional litigation expenses for claims with a less than marginal chance of success. And, despite objectors' claimed willingness to fund the litigation from that point forward, Wetzler had been, to date, the sole source of funding. As the trial court observed, "[d]erivative claims are not a commodity to be prosecuted *seriatim* as long as there is any willing shareholder willing to jump into the breach." *See Lewis v. Anderson,* 81 F.R.D. 436, 439 (S.D.N.Y.1978) ("The avoidance of further expense is an important reason for settlement.").

### 3. Amount of Settlement

As discussed, no money was paid to the shareholders for dismissal of the derivative claims. However, as stated by the trial court, "the question is not whether the settle-

ment is the 'best possible' settlement that can be achieved, [but] whether the settlement is within the range of reasonableness." Here, the record amply supports the trial court's determination that a zero dollar settlement was not unreasonable considering the weaknesses of the claims and the possibility of significant additional expense, including payment of attorney fees, for pursuing the case to trial. *See City Partnership Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1045 (1st Cir.1996) (approving settlement of derivative claims for no consideration where claims had "little, if any, value").

### 4. Extent of Discovery Completed

Prior to settlement, documents had been exchanged, expert disclosures had been made, Rahmani had responded to interrogatories, and Wetzler and his counsel had obtained extensive information derived from the prior arbitration proceedings. The only discovery remaining was party depositions. Hence, it was reasonable to infer that the parties possessed sufficient knowledge to enable them to engage in meaningful and informed negotiations of the settlement agreement. *See City of New York v. Exxon Corp.,* 697 F.Supp. 677, 692 (S.D.N.Y.1988) (where sufficient discovery has taken place to enable counsel to evaluate the case and bargain at arm's length "there is a presumption in favor of the settlement").

### 5. Experience and Views of Counsel

Although objectors contend that the experience and views of Wetzler's counsel should not have been considered because Wetzler's alleged breach of fiduciary duty should be imputed to his counsel, we have determined that Wetzler did not personally benefit at the expense of the other shareholders. Moreover, the record supports the trial court's finding that Wetzler was represented by experienced counsel, familiar with the underlying facts, who recommended the settlement. *See In re Pacific Enterprises,* 47 F.3d at 378 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

### 6. Reaction of Interested Parties

All interested parties, save objectors, supported the settlement. *See Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) (well established that settlement can be fair "notwithstanding a large number of objectors") (collecting cases approving class action settlements in spite of objections by more than fifty percent of the class).

Because the correct standard was applied and the relevant factors thoroughly weighed and evaluated, we conclude that the trial court's approval of the settlement of the derivative claims was a proper exercise of its discretion.

The order and judgment are affirmed.

Judge STERNBERG * and Judge KAPELKE * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.