**Kevin McNulty SAUNDERS, Petitioner–Appellant,**

v.

**Sondra MURATORI, a/k/a Sondra Saunders, in her capacity as trustee and individually; R. Scott Saunders, in his capacity as trustee, d/b/a Arrowhead Preserve, and individually; Lois Ann Saunders, individually; Arrowhead Preserve, LLC, a Colorado limited liability company; Arrowhead Ranch Properties, LLC, a Colorado limited liability company; and Saunders Ventures, RLLLP, a Colorado registered limited liability limited partnership, Respondents–Appellees.**

No. 09CA1645.

Colorado Court of Appeals, Div. V.

Aug. 19, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

LeHouillier & Associates, P.C., Patric J. LeHouillier, Colorado Springs, Colorado, for Petitioner–Appellant.

Doherty Law Firm, P.C., Terence E. Doherty, Colorado Springs, Colorado, for Respondent–Appellee Sondra Muratori.

Sparks Willson Borges Brandt & Johnson, PC, Scott W. Johnson, Colorado Springs, Colorado, for Respondents–Appellees R. Scott Saunders, Lois Ann Saunders, Arrowhead Preserve, LLC, Arrowhead Ranch Properties, LLC, and Saunders Ventures, RLLLP.

Opinion by Judge GABRIEL.

Petitioner, Kevin McNulty Saunders, appeals the district court's order approving a settlement stipulation between three of the beneficiaries of the McNulty Ranch Trust, namely, himself and his sisters, Lisa Saunders Turner and Kassi Saunders Rebitski (the siblings), on the one hand, and their mother and brother, Sondra Muratori, individually and in her capacity as trustee, and R. Scott Saunders, individually and in his capacity as former trustee, on the other hand (because of the familial relationships of the parties and the shared surnames of some of

them, for clarity, we refer to the parties by their first names). Because we conclude that the district court did not abuse its discretion in approving the settlement stipulation over Kevin's objections, we affirm.

## I. Background

In 1992, B.R. McNulty formed the McNulty Ranch Trust to provide income for his daughter, Sondra, and his grandson, Scott, during Sondra's lifetime. Thereafter, the trust corpus would be distributed to all of McNulty's grandchildren, namely, Scott, Kevin, Lisa, and Kassi, in stated percentages. The corpus consisted of a ranch in Park County, Colorado. The trust specified that Scott would continue working as ranch manager. It also designated initial trustees.

The initial trustees eventually resigned, and Sondra ultimately became the sole trustee. Thereafter, in 2000, Sondra sold the ranch to Scott and his wife for $1,750,000. Scott and his wife made a $300,000 down payment on the purchase, which Sondra then used to buy a home for herself in the Bahamas. In 2006, Scott sold the property in several pieces for a total price of $10,037,000, after having previously sold conservation easements for a total price of $856,200.

After learning of their brother's purchase and subsequent sale of the ranch, the siblings petitioned for Sondra's removal as trustee and for an accounting and surcharge against Sondra and Scott. In their petition, the siblings also sought damages from Sondra and Scott for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. In addition, they requested, among other things, a declaratory judgment voiding the sale of the property and ordering that Scott forfeit his remainder interest in the trust.

In late 2008 and early 2009, prior to trial, the parties engaged in mediation. A first mediation conference was unsuccessful. A second conference was then scheduled, in which Kevin participated only intermittently by telephone.

At the conclusion of the second mediation conference, the mediator, all of the parties in attendance, and all of the attorneys who were present believed that an agreement had been reached. The mediator and each such party signed a settlement stipulation, and the siblings' attorney signed Kevin's name on the stipulation because he was not physically present.

The settlement stipulation provided, in relevant part, that Scott, his wife, and certain entities that he controlled would pay an additional $1,100,000 to the trust and $150,000 to the siblings' attorney, and that Scott would relinquish all of his interests in the trust, whether income, remainder, or otherwise. The stipulation also provided that Sondra would pay $400,000 to the trust. Finally, the stipulation contained a provision under which the parties released each other from any claim or demand of any nature whatsoever, known or unknown, that had accrued as of the date of the agreement.

A day or two after the second mediation session, Kevin informed his attorney that he had not, in fact, agreed to the settlement terms, and his attorney scratched his signature out on the stipulation. The remaining parties then raised with the district court the question of how best to proceed. Scott's counsel proposed proceeding by way of a motion by Sondra, as trustee, asking the court to approve the settlement stipulation. The other parties could then file any responses, as appropriate. The court indicated that it was amenable to proceeding in that fashion and asked Kevin's new counsel if that procedure was acceptable. Counsel replied that it was, as long as Kevin's appellate rights were preserved.

Sondra subsequently filed a motion to approve the settlement stipulation, as ordered by the court. The siblings responded by objecting to the above-noted release language, arguing, based on newly discovered evidence suggesting Sondra's continuing mismanagement of the trust, that the release was overbroad. The siblings did not wish to release Sondra from liability for such post-petition conduct.

The court acknowledged the siblings' concerns and indicated that it could not approve the settlement stipulation with the release as written in light of the newly discovered evidence. The respondents agreed to reconsider their position as to the scope of the re-

lease and to advise the court in writing of their position. They ultimately proposed modifying the release to except claims related to the establishment, composition, and management of a certain investment account and distributions therefrom.

Kevin also objected to the court's authority to enforce the stipulation generally, and he filed an affidavit stating that he had not given his counsel permission to sign the stipulation on his behalf. He also asserted that because of a conflict of interest, Sondra could not act on behalf of the trust.

After a hearing, the court held that the settlement stipulation was enforceable on two alternative grounds. First, the court held that the settlement stipulation was prudent and offered in good faith, and that it was fair, reasonable, and in the best interests of the parties. Second, it held that the settlement stipulation was enforceable as a contract under Colorado law because, despite Kevin's affidavit, his then-counsel's actions were consistent with and indicative of his agreement, and his then-counsel would not have signed the stipulation without his authority to do so.

Kevin now appeals.

## II. Approval of the Settlement Stipulation

■ Kevin's principal argument on appeal is that the district court erred in approving the mediation agreement when he did not sign or agree to it. As an apparent matter of first impression in Colorado, we conclude that when, as here, trust beneficiaries bring suit for the benefit of a trust, a court may properly approve the settlement of such an action, even over the objection of one of the petitioner beneficiaries, if the settlement is just and reasonable. We further conclude that the district court did not err in approving the settlement stipulation.

### A. Propriety of Trustee's Motion

As a preliminary matter, we reject Kevin's contention that the trial court erroneously allowed Sondra to settle claims on behalf of the trust. As we discuss below, the parties agree that this suit was in the nature of a derivative action brought by the siblings on behalf of the trust. The siblings comprised all of the allegedly aggrieved beneficiaries, and thus, the interests of the trust were more than adequately represented by the siblings and their two attorneys. For her part, Sondra was merely defending claims brought against her. Although the district court directed Sondra, as trustee, to file the motion for approval of the settlement stipulation, to hold that she was representing the trust, or settling a claim on behalf of the trust, would elevate form over substance.

### B. Approval over Kevin's Objection

■ In equity, trust beneficiaries may bring a suit for the benefit of a trust when the trustees refuse to do so. *See Moore v. 1600 Downing Street, Ltd.,* 668 P.2d 16, 19 (Colo.App.1983) (" 'It is fundamental to the law of trusts that *cestuis* have the right 'upon the general principles of equity' ... and 'independently of [statutory] provisions ... to sue for the benefit of the trust on a cause of action which belongs to the trust if' the trustees refuse to perform their duty in that respect.' ") (quoting *Riviera Congress Assocs. v. Yassky,* 18 N.Y.2d 540, 277 N.Y.S.2d 386, 223 N.E.2d 876, 879 (1966)); *see also Brown v. Dolese,* 154 A.2d 233, 239 (Del.Ch. 1959) ("[A] trust beneficiary may sue if the trustee refuses to sue."). Such a suit is analogous to a shareholder derivative suit on behalf of a corporation. *See Velez v. Feinstein,* 87 A.D.2d 309, 451 N.Y.S.2d 110, 114 (N.Y.App.Div.1982) ("Where a claim exists in favor of the trust ... against third persons and the trustees are under a duty to enforce that claim and have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust, analogous to stockholders' derivative suits on behalf of a corporation."). Indeed, Kevin himself characterized his petition as a derivative suit.

■ In a shareholder derivative suit, a court may approve a settlement agreement over the objections of a shareholder, even if the shareholder is one of the named plaintiffs in the suit. *See, e.g., Denicke v. Anglo California Nat'l Bank,* 141 F.2d 285, 288 (9th Cir.1944) ("[Stockholder's] position in the litigation is assimilated to that of a guardian ad litem with power in the court, not in the stockholder, to compromise the rights of the

real party in interest, which is the corporation itself"; thus, the court could approve the settlement without consent of the original plaintiffs); *Russell v. Weyand,* 5 Cal.App.2d 259, 42 P.2d 381, 382 (1935) ("The court and not plaintiffs had the authority to compromise the rights of the corporation under suitable circumstances."); *Bysheim v. Miranda,* 44 N.Y.S.2d 15, 22 (N.Y.Sup.Ct.1943) (approving settlement agreement over the objection of stockholder who was one of seven co-plaintiffs to bring the original derivative suit).

■ The theory underlying the principle that a court may approve the settlement of a derivative action over the objection of a named plaintiff is that the shareholder plaintiffs are acting as representatives of the corporation, and the court is charged with protecting the interests of the corporation as a whole. *See Russell,* 42 P.2d at 382 ("In [a shareholder derivative suit], it was the duty of the court before whom the action was pending to protect the interests of the corporation and to exercise supervision over the conduct of plaintiffs.").

■ In our view, this principle is equally applicable here, where Kevin, Sondra, and Scott all agree that the underlying petition was in the nature of a derivative action in which the siblings were acting as representatives of the trust. This view finds further support in trust cases in which courts have exercised their authority to protect the trusts, the trusts' assets, and the settlors' intent, in much the same way as a court in a shareholder derivative suit acts to protect a corporation's interests. In these cases, courts have approved settlements that modify or even terminate trusts when circumstances unforeseen by the settlors develop and impair the trusts' original purposes. *See, e.g., Connecticut Bank & Trust Co. v. Coffin,* 212 Conn. 678, 563 A.2d 1323, 1336–38 (1989). When such unforeseen circumstances arise and modification would further the purposes of a trust, a court may make such modifications, even without the consent of all of the beneficiaries. *See* Restatement (Third) of Trusts § 66(1) & cmt. a (2003) (discussing the so-called "equitable deviation" doctrine, which allows modifications or devia-

tions from a trust's administrative or distributive provisions if, due to unanticipated circumstances, such modifications or deviations will further the purposes of the trust).

For these reasons, we conclude that the district court was authorized to approve the settlement of the beneficiaries' claim, even over Kevin's objection. The question thus becomes whether the court properly did so on the facts of this case.

### C. Whether the District Court Abused Its Discretion

■ The district court evaluated the settlement stipulation pursuant to the procedures set forth in sections 15–12–1101 to – 1102, C.R.S.2009, which generally apply to court approval of compromises of probate matters such as disputes concerning the admission to probate of a will. As noted above, when the court proposed proceeding under these provisions, even though this case involved a trust, Kevin did not object to that procedure, subject to the reservation of his appellate rights.

Section 15–12–1102(1)(c) provides, in pertinent part:

> After notice to all interested persons or their representatives, including the personal representative of the estate and all affected trustees of trusts, the court, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable, shall make an order approving the agreement and directing all fiduciaries under its supervision to execute the agreement.

This standard is similar to that which guides courts in determining whether to approve a settlement agreement in a shareholder derivative suit. Thus, a court may approve such a settlement if the court determines that the settlement is fair, adequate, reasonable, and in the best interests of the corporation and its shareholders. *See, e.g., Thomas v. Rahmani–Azar,* 217 P.3d 945, 947 (Colo.App.2009) (in the context of a shareholder derivative suit, a court must consider whether a settlement agreement is fair, ade-

quate, and reasonable); *see also In re General Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1085–86 (6th Cir.1984) (district court properly weighed applicable factors in finding that settlement of derivative claims was reasonable, fair, and adequate).

Moreover, in *In re Norwest Bank,* 134 N.M. 516, 80 P.3d 98, 100 (N.M.Ct.App.2003), the one reported decision that the parties have cited and that we have found involving a request to approve a mediated settlement in a case in which a trust beneficiary brought a "derivative" action against the trustee, the court applied a similar standard. There, a trust settlor's widow brought what the parties agreed was a derivative action against the trustee, alleging that the trustee had sold the trust's primary asset for less than it was worth and without proper consideration for the beneficiaries. In the middle of trial, the widow reached a mediated settlement with the trustee and filed a motion for approval of that settlement. *Id.* at 101. The other beneficiaries opposed the motion, arguing that the settlement had been reached without their participation and ignored their interests. *Id.* The trial court approved the settlement, and two of the beneficiaries appealed. *Id.*

As pertinent here, the appellate court noted that it reviews approval of a mediated settlement in a derivative action for an abuse of discretion. *Id.* at 105. The court stated that in order to be approved, a mediated settlement must be fair, adequate, reasonable, and free from collusion or fraud. *Id.* at 105–06. The court then delineated four factors that a trial court should consider in making this determination:

"(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and extensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable."

*Id.* at 106 (quoting *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984)). Applying these factors to the case before it, the court concluded that the trial court did not abuse its discretion in approving the mediated settlement. *Id.* at 106–07.

We are persuaded by the *Norwest Bank* court's analysis and follow it here. Based on that analysis and on the parties' agreement to proceed under sections 15–12–1101 to – 1102, we conclude that the district court properly sought to determine whether the settlement stipulation was just and reasonable. *Cf. Wachovia Bank & Trust Co. v. Waddell,* 234 N.C. 454, 67 S.E.2d 651, 655 (1951) (affirming trial court's enforcement of probate settlement it found to be in the best interests of the estate and of the trust beneficiaries).

■ We review the district court's resolution of this question for an abuse of discretion. *See Norwest Bank,* 80 P.3d at 105 ("We review approval of a mediated settlement in a derivative action for abuse of discretion."); *Wachovia Bank & Trust,* 67 S.E.2d at 655 ("[T]he matter of the approval of the settlement rested in the sound discretion of the court below . . . ."); *cf. Thomas,* 217 P.3d at 948 ("[A] trial court's approval of a settlement of a derivative action is a discretionary determination, which, as in class action settlements under C.R.C.P. 23(e), will not be overturned on review absent a showing of abuse of discretion."). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 512 (Colo.App.2006).

■ Here, the case had been pending since 2007, and the court was well informed about it through extensive motions practice. After a hearing, the court found that the settlement stipulation at issue was prudent and offered in good faith, and that it was fair, reasonable, and in the best interests of the parties. In reaching this determination, the court considered the expense of continued litigation and expressed concern about the additional depletion of the trust's resources as a result of such litigation.

Further, evidence in the record included several expert opinions suggesting that the amount being paid pursuant to the settle-

**556**

ment stipulation exceeded the measure of damages in this case, were the siblings to prevail at trial. Although the siblings' experts disagreed and suggested that the loss to the trust was much greater, we conclude that the court acted well within its discretion in crediting the expert opinions provided by Sondra's and Scott's experts over those provided by the siblings' experts. *See In re Marriage of Bayer,* 687 P.2d 537, 539 (Colo. App.1984) (when evidence was the subject of conflicting expert testimony, court could choose to believe one expert over the other, and appellate court was not at liberty to disturb such factual findings).

In sum, because evidence in the record amply supports the district court's determination that the settlement stipulation was fair, reasonable, and in the parties' best interests, we conclude that the court did not abuse its discretion in approving the settlement stipulation in this case.

### D. Whether the District Court Approved a Unilateral Modification

Finally, we are not persuaded by Kevin's assertion that the court approved an alleged unilateral modification of the stipulation's terms, namely, changing the release provision to except certain additional claims against Sondra without his agreement to the new release. When the question of modifying the release language was raised in open court, the court asked Kevin's attorney if there was anything he wanted to add to what his sister's counsel had said. Counsel responded, "No, Your Honor, I don't have a dog in this fight...."

Because Kevin failed to object in the district court to the modification of the release language, even when expressly given the opportunity to do so, we conclude that he has waived any contention that the court erred by unilaterally modifying the settlement stipulation. Accordingly, we do not address this issue. *See In re Estate of Musso,* 932 P.2d 853, 857 (Colo.App.1997) ("Failure to make an objection at trial on the grounds asserted on appeal is deemed a waiver of those issues, which precludes us from considering the issue on appeal.").

### III. Other Issues

In light of our above disposition, we need not address the court's alternative reasoning that it could approve the settlement stipulation because a binding contract had been formed between the parties during mediation.

### IV. Conclusion

For these reasons, the order is affirmed.

Judge WEBB and Judge RUSSEL concur.